## MEEKER et al. v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division One, November 25, 1903.

1. **Negligence:** STREET CAR: FAILURE TO SEE APPROACHING CHILD. Where the evidence shows that the gripman, by the exercise of ordinary care, could have seen a four-year-old child approaching the track at a street car crossing in time to have avoided striking her, the question of defendant's negligence is one for the jury.

2. ———: ———: DANGEROUS POSITION. It is the duty of a gripman in charge of a street car to stop the same in time to avoid injuring a child as soon as he sees the child is in a position of peril or "about to be placed in a position of peril."

3. **Testimony:** CURING ERROR. An error in excluding the testimony of a witness as to the time it takes to stop a car on a down grade, is cured by subsequently permitting the witness to testify on that point.

4. ———: ———: CURED BY CROSS-EXAMINATION. Error in embracing certain elements in a hypothetical question is cured by defendant's counsel embracing them in certain questions asked on cross-examination.

5. **Stopping Cable Cars:** DANGER TO OTHER PASSENGERS. There is nothing in the manner and means provided for stopping cable cars which suggests danger to passengers on board from suddenly stopping them in time of emergency.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

AFFIRMED.

*Jno. H. Lucas* for appellant.

(1)    The court erred in admitting incompetent evidence, namely, that of an alleged expert, as to distance in which a train could be stopped.    Maher v. Railroad, 64 Mo. 276; Mammerberg v. Railroad, 62 Mo. App. 567; Senn v. Railroad, 108 Mo. 150; Turner v. Hoar, 114 Mo. 335; Benjamin v. Railroad, 50 Mo. App. 602; Culbertson v. Railroad, 140 Mo. 59; Ruschenberg v. Railroad, 161 Mo. 81. (2) The court erred in refusing to sustain the demurrer offered by the defendant.    There was no evidence of any negligence on the part of the gripman. Kennedy v. Railroad, 43 Mo. App. 3; Boland v. Railroad, 36 Mo. 484; Mashek v. Railroad, 71 Mo. 276; Kreis v. Railroad, 148 Mo. 321; Chilton v. Railroad, 152 Pa. St. 425; Fenton v. Railroad, 126 N. Y. 625; Flanagan v. Railroad, 163 Pa. St. 102; Tishacek v. Railroad, 110 Wis. 417; Campbell v. Railroad, 104 La. 183; Sherman v. Railroad, 72 Mo. 62; Culbertson v. Railroad, 140 Mo. 35; Hays v. Railroad, 51 Mo. App. 438.    (3)    The court erred in giving instructions for the plaintiff, refusing those asked by the defendant, and giving instructions of its own motion.    Dunn v. Railroad, 98 Mo. 653; Iron Mountain Bank v. Murdock, 62 Mo. 70; Schlereth v. Railroad, 96 Mo. 509; Kennedy v. Railroad, 70 Mo. 252; Williams v. Railroad, 96 Mo. 275.    (4)    The verdict was contrary to the law and unsustained by the evidence. See authorities above cited.

*Scarritt, Griffith & Jones* for respondents.

(1)    (a) The objections to questions asked witness Hite are too general to be considered.    Schmidt v. Railroad, 163 Mo. 651; Peck v. Chouteau, 91 Mo. 144; Schlereth v. Railroad, 115 Mo. 107.    (b) The matters suggested are immaterial and properly omitted from the hypothetical question asked.    Rogers on Expert Testimony (2 Ed.), p. 21; 12 Am. and Eng. Ency. Law (2 Ed.), p. 474; Schafstette v. Railroad, 74 S. W. 828; Russ v. Railroad, 112 Mo. 49; Goodwin v. State, 96 Ind.

574. (c) Appellant waived demurrer to plaintiff's evidence by putting in its own evidence, and not requesting a peremptory instruction at end of all the evidence, but instead asking instructions submitting the issues to the jury. Bray, Adm'r, v. Seligman, 75 Mo. 31; Hopkins v. M. W. A., 94 Mo. App. 409; Garst v. Good, 50 Mo. App. 151; Minton v. Steele, 125 Mo. 181; McKinney v. Guham, 38 Mo. App. 344; Jennings v. Railroad, 99 Mo. 399; Merc. Co. v. Burrill Sisters, 66 Mo. App. 117. (2) There was ample evidence upon which to submit case to the jury. (a) All testimony favorable to plaintiffs must be taken as true, upon a demurrer. Cogan v. Railroad, 73 S. W. 741; Barth v. Railroad, 142 Mo. 549. (b) Greater care is required of those operating railway on a city street, where people, especially children, may be expected to be on or near the tracks. Tishacek v. Railroad, 110 Wis. 417; Morgan v. Railroad, 159 Mo. 281; Livingston v. Railroad, 170 Mo. 470; Boland v. Railway, 36 Mo. 491. (c) Negligence, under all the circumstances, was a question for the jury. Klockenbrinck v. Railroad, 72 S. W. 902; Baird v. Railroad, 146 Mo. 280; Gratiot v. Railroad, 116 Mo. 466. (3) No error in court's modifying defendant's instruction 8. (a) Instructions are given and should be read in the light of the facts, and in connection with the other instructions in the case. Morgan v. Railroad, 159 Mo. 282; Donahoe v. Railroad, 83 Mo. 557. (b) The very language used by the court in modifying this instruction has been expressly approved by this court. Bunyan v. Railroad, 127 Mo. 12; Livingston v. Railroad, 170 Mo. 452.

MARSHALL, J.—This is an action, under the statute, by the parents, to recover five thousand dollars damages for the death of their four-year-old daughter, Herrietta, caused by being run over by one of the defendant's cable cars, at the corner of Summitt avenue and Twenty-third street, in Kansas City, on July 9,

1900, at about 9 o'clock a. m.    There was a judgment below for the plaintiffs for the amount claimed, and the defendant appealed.

The negligence charged in the petition is that the defendant's servants "saw the child upon the tracks of said defendant and approaching there at said crossing of said Summitt and Twenty-third streets in a position of imminent peril, or when by the exercise of ordinary care they might have seen said child upon said tracks and approaching thereto in such position of imminent peril in time to have stopped said train of cars and avoided the injury complained of." And further, that the operatives of the cars failed to ring the bell or to give any notice or warning to the plaintiff's daughter of the approach of the car.

The trial developed the facts to be as follows: Summitt avenue runs north and south. Twenty-third street runs east and west and is sixty feet wide. Summitt avenue slopes downward from the north towards Twenty-third street, on a two per cent grade, and is level where it intersects Twenty-third street. Beginning at the south line of Twenty-third street Summitt avenue again slopes towards the south, on a grade of six and four-tenths feet to the hundred. The defendant has a double-track, standard-gauge, cable road on Summitt avenue. The south-bound cars run on the west side of Summitt avenue. The train consisted of two cars, a gripcar and a trailer, and together the train was forty-six feet long. From the curb line on the west side of Summitt avenue at the south side of Twenty-third street, it is fourteen feet to the east rail of the south-bound track. The curb is six inches thick. In the sidewalk there is a water plug which stands ten and a half feet west of the curb. So that from the water plug to the east rail of the south-bound track it is twenty-five feet. The cars run at the rate of nine miles an hour, or thirteen and one-half feet a second. The day was clear and the tracks and street were dry. The locality

is near the southwest terminus of the defendant's road. The plaintiffs live on Twenty-third street, two and a half blocks west of Summitt avenue. The father is a barber and was agent for a laundry, and his place of business was on the west side of Summitt avenue about a block south of Twenty-third street.

About nine o'clock on July 9, 1900, the mother started with her little daughter to go down town. When she reached the southwest corner of Summitt avenue and Twenty-third street, she sent the child along the west side of Summitt avenue, to take a bundle of laundry to her father's shop, and told her when she returned to wait on that corner for her, and she went across Summitt avenue and a half block east thereof, on the north side of Twenty-third street to a grocery store, to make some purchases. The child took the bundle to her father and returned in safety to the southwest corner of Summitt avenue and Twenty-third street, and stood or was "lifting her little skirts and dancing" at or near the water plug above described. The mother completed her purchases at the grocery store and proceeded to return for the child. She walked westwardly along the north side of Twenty-third street, and when she reached the car tracks on Summitt avenue, on the north line of Twenty-third street, she saw her child dancing on the sidewalk at the southwest corner as aforesaid; at that time a train of cars came along and she had to stop east of the track to let it pass. It ran across Twenty-third street and the next thing she knew the car had run over her child and killed her. She did not see her child leave the sidewalk and go into the street, for the train of cars was then between her and the child so she could not see her. She says that no bell was rung or warning given when the car approached Twenty-third street, and that the gripman was sitting on the rail on the left-hand side of his box in the gripcar, with one hand resting on the rail on each side of him, and his

back towards the east, and was looking towards the rear of the car and talking to some one who was back there.

All the witnesses for both the plaintiff and the defendant, who saw the child, say she was on the southwest corner of said streets, and all who saw her move say she walked from the water plug across the sidewalk and stepped from the curb into the street, and walked directly eastwardly across Summitt avenue on a line with the south line of Twenty-third street. The gripman says he rang his bell when he was opposite the Chadwick Flats, which was north of Twenty-third street and where Twenty-second street would intersect Summitt avenue if it was cut through, and that he did not ring it any more.

The gripman then testified as follows: "I was going south, and just as I entered the street I saw a little girl standing on the corner of the curbing about five or six feet south of the street line running east and west. She was standing on the curb on the west side of the street running south, and a little south of the curb that went east and west. She was standing there just apparently quiet, and as I approached, my car got very near opposite and she gave a jump and started all at once, and I pulled my brakes as suddenly as possible, and brought my car to a stop as quick as I could make it. I had my car very nearly opposite her, well, it lacked probably five or six feet of being opposite when she made the jump and started across the track, so I stopped my car as quick as possible. I think I stopped my car within twelve or fifteen feet."

He further said he hollered to her just as she was running across the street, and could not remember what he said. He further testified:

"Q. You anticipated that she would go in front of the car? A. That she would go in front of the car, I knew the way she started she was going in front of the car the way it was going; she had a very short distance to go and I had a very short distance to go and

it was impossible to stop before I hit her, and the way she was going the car would about meet her, hit her right in the center of the track. I know I made a quick stop; I think I never made a quicker stop than there; with the pitch of the hill the rule is twenty to twenty-five feet in stopping these cars, and I know I didn't go over half the space, and it was right on the pitch of the viaduct where I went down and stopped my car.''

He further testified that it was not over ten feet after he struck the child before he stopped the car. The other testimony in the case, however, showed that the child was taken out from under the rear wheel on the east side of the gripcar at a point fifty to sixty feet south of the south line of Twenty-third street, and all the testimony is to the effect that her body lay across the east rail of the south-bound track.

The conductor testified: ''We were going south on Summitt avenue just at Twenty-third street and we were almost or just at Twenty-third street, at the north side, when I noticed a little girl standing on the sidewalk; I can't say just exactly where we were, but I noticed her standing there, and we were almost to her when I saw her make a bound across the street east, and I saw Mr. Wyatt (the gripman) throw his brake and I grabbed my brake, but he had the car stopped before I had more than time to get my brakes tight.''

H. E. Brown, a passenger, was called as a witness for the defendant, and testified that he was seated in the next to the last seat from the rear of the gripcar, and on the west side thereof, and that he was looking at his collection book and did not look up until the car was very nearly across Twenty-third street; that the front end of the gripcar was then about across Twenty-third street; that he saw the child about half way between the curb and the west rail of the south-bound track and six or eight feet in front of the car; that she was going diagonally across the street; that the gripman may have seen the child leave the sidewalk, but he did not do so

(he was looking down at his book); that the ringing of the bell attracted his attention (the gripman said he did not ring the bell and that the last time he had rung it was when the car was at the Chadwick Flats which was a block north of the place of the accident); that he did not hear any cries or screams before the accident; that the body was found under the gripcar resting on the east rail of the south-bound track, and her head towards the east and beyond the rail, and the wheel resting on the abdomen.

Judith Davis testified on behalf of the plaintiff that she was back of the grocery store which stood on the northwest corner of Summitt avenue and Twenty-third street; that just before the accident she went to the cistern in the yard and looking towards the southeast she saw the child standing on the southwest corner of the streets; that when she first saw her she was standing on the corner; that the child then started to walk directly east across Summitt avenue towards the south-bound track; that at that time from her position she could not see the car approaching form the north; that then she saw the first end of the car coming south; that it looked to her that when the child reached the track the child and the car came together.

The plaintiff's evidence tended to show that the car when running nine miles an hour could have been stopped in six to ten feet in an emergency, and this was true whether it was on a level or on a down grade of six and four-tenths per cent; and whether the car was empty or loaded with passengers.

Frank Vaughn, a witness for the defendant, testified that he was on the northwest corner of the streets, and saw the child on the southwest corner by the water plug, and that she stepped off the sidewalk onto the street and started to walk east across the street, and when she got on the track the car hit her.

The street was entirely free and clear of all obstruc-

tions that could interfere with the vision at the time of the accident.

Other witnesses testified, but their testimony was not materially different from that herein referred to. It appeared that the gripcar was equipped with two brakes—an automatic brake and a hand brake, and the trailer had a hand brake.

At the close of the plaintiff's case the defendant demurred to the evidence, the court overruled the demurrer and the defendant excepted.

The case was sent to the jury upon the theory that the servants saw the child in a position of peril, or by the exercise of ordinary care could have seen her in such a position or about to be placed in such a position, in time to have averted the injury and failed to do so. The defendant asked the court to instruct the jury that the defendant could only be held liable if the child was actually on the track and actually in a position of peril, and that it could not be held liable if the child was only approaching the track and about to be placed in a position of peril, but the court refused to so instruct, and the defendant assigns this as error, together with other rulings to be noted later in the opinion.

## I.

The principal contention of the defendant is that the demurrer to the evidence should have been sustained.

The physical conditions present in this case are, first, a four-year-old girl on the southwest corner of the street at a point twenty-five feet west of the east rail of the south-bound track; second, a train of cable cars on Summitt avenue at the north side of Twenty-third street, running at the rate of nine miles an hour, or thirteen and a half feet a second, with only one passenger on the gripcar, as far as the evidence shows, and

distant sixty feet from the place of the accident; third, the child knocked down and run over by the train at or about the south line of Twenty-third street; fourth, the body of the child taken out from beneath the gripcar, at a point fifty or sixty feet south of the south line of Twenty-third street, and the rear wheels of the grip-car resting on the abdomen of the child and her head towards the east and extending beyond the east rail of the south-bound car track; fifth, a two per cent slope of Summitt avenue north of Twenty-third street, a level space the width of Twenty-third street (sixty feet), and a six and four-tenths slope towards the south beginning at the south line of Twenty-third street; sixth, the grip-car, equipped with an automatic brake and a hand brake; seventh, an unobstructed view of the whole street at the time of the accident.

The testimony for the plaintiff showed that the car could have been stopped in an emergency in from six to ten feet, and this, too, whether it was on the level or on the grade south of Twenty-third street. The testimony of the gripman was that from twenty to thirty-five feet was allowed, in which to stop on that grade, but that he stopped within ten feet after the car struck the child, and the testimony was practically all to the effect that the child was dragged by the gripcar and was taken out from under the gripcar at a point from fifty to sixty feet south of the south line of Twenty-third street.

The testimony is also undisputed that at some time after the train passed the north line of Twenty-third street, the child left the southwest corner of the streets and started east across Summitt avenue (directly across, the most of the witnesses say, and diagonally across, the others say), and that she had traveled the space of ten and a half feet from the water plug to the curb line, stepped from the curb to the street, and traveled fourteen feet further eastwardly and had nearly crossed the south bound track when she was struck by the car.

In other words, that a child four years old trav-

eled twenty-five feet towards and upon the track while
the car was traveling sixty feet.  And that the gripman
saw the child on the corner when he was sixty feet north
of the corner, and that thereafter the child had time to
leave the corner and  travel twenty-five feet towards
and nearly across the track while the car was running
sixty feet, but that the gripman did not see, and could
not have seen, the child approaching the track until the
car was within six or eight feet of her, and could not
have stopped the car in time to have avoided the acci-
dent, although the street was perfectly clear and there
was nothing to obstruct the vision.

Or, otherwise stated, that a four-year-old girl can
walk or run twenty-five feet while a train traveling at
the rate of nine miles an hour travels sixty feet.  At
such a rate of speed the train would travel the sixty
feet in about four and one-half seconds.  If the child
traveled twenty-five feet in four and one-half seconds,
it would be five and five-tenths feet a second, or nine-
teen thousand, eight hundred feet an hour, or a little
less than four miles an hour.  That is, that the cable
car ran only about twice and two-fifths times as fast
as the child.

But if all this be conceded, the fact would still re-
main that there was nothing to prevent the gripman
from seeing the child at any time after she started
towards the track.  He admits he saw the child when
she was within six or eight feet of the track, and says it
was too late then to stop the car in time to avoid the in-
jury, and he and the conductor both say she just jumped
in front of the car.  But this in no wise explains or
satisfies the mind as to why the gripman did not see the
child after she started towards the car and while she
was traversing the seventeen to nineteen-foot interval
before she reached the point six to eight feet from the
track where the gripman and conductor saw her.  No
reason is given why they did not see the child approach-
ing the track before she got so close to the car, and none

can be given except that the gripman did not look, but, as the mother testified was the fact, was looking towards the rear of the car, talking to some one back there. The testimony all shows that the gripman could and would have seen the child in time to have averted the injury if he had been attending to his duty. The plaintiff's testimony is that he could have stopped the car in six to ten feet, and the gripman says he did stop the car in ten feet after the car struck her. The fact that she was dragged after being struck and that her body was taken out from under the car at a point fifty to sixty feet south of the south crossing on Twenty-third street, over which the child was attempting to pass when she was struck, proves that the gripman did not commence to stop his car until he had at least reached the south crossing on Twenty-third street, and also proves that if he had been doing his duty he could have stopped the car on the sixty-foot level of Twenty-third street, and before it reached the south crossing, and could thereby have averted the injury.

Whether, therefore, the case be viewed solely in the light of the physical facts and the testimony adduced by the plaintiff, or upon the whole case made, the conclusion is irresistible that the plaintiff made out a proper case for the jury, and that upon the whole case the verdict of the jury is for the right party.

## II.

The defendant assigns as error the modification of its eighth instruction, which was as follows, the modification being the words embraced in brackets:

"Even if the jury find from the evidence that the employees of defendant, in charge of the train in question, saw the child approaching in the direction of the street car tracks, still you are instructed that the law did not require them to stop the train until they saw or might have seen, by the exercise of reasonable care, that

the child was [or about to be placed] in a position of peril.   And if you find from the evidence that as soon as the child was [or about to be placed] in such position of peril they used reasonable care to prevent the injury complained of, but were unable to do so, then plaintiffs can not recover and your verdict must be for defendant.''

The defendant claims that the modification enlarged the issues, and without this, that it misstates the law, in that it makes the defendant liable if the child was in a position of peril as well as if it was ''about to be placed'' in such a position, and it claims that the latter is not the law.

The modification did not enlarge the issues, for the petition charged the negligence to be that the servants of the defendant ''saw the child upon the tracks of the said defendant and approaching thereto,'' etc. This is tantamount to the same thing as expressed in the instruction, that the child was in a position of peril or about to be placed in such position.

The defendant is also in error upon the proposition of law.

In Bunyan v. Railroad, 127 Mo. 12, the charge of negligence was that the servants failed to see the deceased approaching the tracks and being on or near the tracks, in a place of danger, or as stated by MACFARLANE, J., speaking for the court, ''The action is grounded upon the negligence of the gripman in failing in his duties after deceased had placed, or was about placing, himself in a dangerous position,'' and the learned judge disposed of the matter by saying:

''The testimony of the gripman shows that he discovered the deceased was staggering and did not know what he was doing when at least five or six feet from the track.   It was his duty, under these circumstances, to have at once taken precautions to prevent the collision. He should not have deferred action until the deceased had placed himself *in a dangerous position,* when it was

manifest to him that he was heedlessly staggering into it. This principle, dictated as it is by common humanity, was recognized by the gripman, for he says that on seeing that deceased was paying no attention, and did not seem to know what he was doing, he immediately warned him of the danger and used all possible efforts to avoid injuring him. Now, it will be seen that the instruction, which only required the gripman to attempt to avoid injuring deceased 'after he had put himself in danger,' fell short of declaring the whole duty required of him in the circumstances. The primary object of this instruction was, evidently, to inform the jury as to the care required by deceased himself. So far as the instruction was confined to this purpose the law was correctly given, but it did not declare the duty of the gripman as hereinbefore announced. The jury could have drawn no other conclusion from the instructions than that the gripman, though seeing that deceased was staggering, was paying no attention, and was not going to stop, was still under no obligation to avoid striking him until 'after he had put himself in danger.' "

In Baird v. Railroad, 146 Mo. 265, one of the acts of negligence charged was a failure to keep a proper lookout for the child as he was approaching the track, and Burgess, J., said: "It was the duty of defendant's employees in charge of the cars to keep a lookout along its track where persons were likely to be found, and if the motorman might, by having his attention on the street in front of the cars, have discovered, in time to stop the car, that the child was about to cross the track, or if after discovering his danger he failed to give the usual signals to warn him of the car's approach, he was guilty of negligence."

In Livingston v. Railroad, 170 Mo. 452, the plaintiff's instructions authorized a recovery if the defendant's engineer "saw the perilous position of the child upon the track or about to place itself in a perilous position upon the track." The defendant's instructions on

the other hand told the jury that the defendant was not liable unless the child was upon the track and in a position of peril, and omitted the other hypothesis of the child being about to be placed in a position of danger. And it was argued there, as it is here, that the defendant was not liable unless it was guilty of negligence after the child was actually on the track, and not if it was only about to be placed in a position of peril, and counsel there argued that, "The child was in no danger at all until it got upon our track." There was a verdict for the defendant in the lower court, and this court reversed that judgment because the defendant's instructions were erroneous, saying that they were predicated upon rules applicable to persons of mature years, but were wholly inapplicable to a child of three and a half years.

The gripman in this case saw or could have seen this child approaching the track and about to be placed in a position of danger, or more properly speaking, running into inevitable danger and death, in ample time to have stopped the car and have averted the injury, and it was negligence for him not to do so.

### III.

The defendant next assigns as error the exclusion of a question asked the plaintiff's witness, Hite.

The witness Hite was an ex-gripman, who had worked on the defendant's road, knew its cars, and the locality where the accident occurred. In response to questions by plaintiff's counsel he had stated that the car could have been stopped on the level of Twenty-third street in six to ten feet in an emergency. The defendant's counsel then asked whether it would make any difference if the attempt to stop the car was on the down-grade of six and four-tenths per cent, south of Twenty-third street. Plaintiff's counsel objected to the question on the ground that his position is that the

stop should have been made before the front of the car reached the down grade and while the car was still on the level ground; that is, before the car reached the south crossing on Twenty-third street. The court sustained the objection and the defendant excepted and now assigns this ruling as error.

Counsel for the defendant overlook the fact that on the next day of the trial the court permitted them to fully examine this same witness touching this same matter, and that the witness testified that it would make no difference that the the stop was to be made on that slope nor would it make any difference whether the car was empty or loaded. This cured the error, if any, in the ruling complained of.

Counsel for defendant also assign as error the hypothetical question put to the plaintiff's expert, as to the space within which the car could be stopped, and argue that it did not embrace the conditions as to whether the car was empty or loaded, nor did it take into account the safety of the other passengers on the car. The witness was afterwards interrogated by the defendant as to whether the car being empty or loaded would make any difference, and he said it would not. So that even if that was a proper element to be embraced by the hypothetical question, it is harmless error in this case. The record shows only one passenger on the car, and his safety does not appear to have been seriously jeopardized, for he appeared as a witness for the defendant. If there were other passengers on the cars, that fact does not appear. Neither was there anything in the manner adopted or provided for the running or stopping of this car, which suggests to the ordinary mind the possibility of danger to the other passengers, however quickly it was possible to stop this cable car. Such cars are unlike electric cars, where the current can be reversed and the stop effected so suddenly as to cause danger to other passengers, and they are also unlike steam cars, where the engine can be re-

versed and the air brakes applied so vigorously as to cause like danger.

There was no reversible error in these rulings, nor have any been pointed out or discovered in the record. The judgment is clearly for the right party, and it is affirmed. All concur.