## MARY S. HIGGINS v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### Division One, June 19, 1906.

1. **DAMAGE STATUTE: Death Claims: Applicable to Street Railways.** The damage statute (sec. 2864, R. S. 1899) giving to the widow $5,000 damages for the negligent killing of her husband, applies to street railways, whether operated by electricity or other motive power. They are "public conveyances" and they use "cars" to carry the public—things to which the statute expressly applies.

2. **NEGLIGENCE: Warning: Instruction: Uncontradicted Evidence.** In a negligence suit based on the failure of the motorman of the street car to ring the bell, where there is evidence that the bell was sounded and none by plaintiff to the contrary, the court should leave negligent failure to give warning out of the instructions.

3. ——: **Unlighted Car: Trolley off of Wire.** The petition alleged negligent failure to have a light upon the car that struck plaintiff's husband as he was about to cross the track, and the evidence showed that the trolley pole left the trolley wire 300 feet or more before it reached the place of the accident, and that this divested the car both of light and motive power, but the evidence does not explain how this happened to be done, or whether it was the result of the negligence of defendant's agents operating the car, or of some independent cause. *Held,* that the evidence does not sustain the allegation.

4. ——: **Speed of Car: No Evidence of Surroundings.** A rate of six or eight miles an hour in the early night by a street car on a public street in the midst of a great city does not indicate such negligence as will authorize the court to submit the question of excessive speed to the jury. There must, in addition, be some evidence as to the surroundings, the amount of travel, and the character of the streets and crossings.

5. ——: **Contributory: Presumption.** The presumption is that the driver of a heavy wagon on a public street early in a November night, exercised due care for his own safety before attempting to cross the track, by looking and listening. But this presumption disappears in face of the fact that he was moving facing the car for at least 133 feet before he was struck, that it could have been seen for 700 feet, that it moved 400 feet before its lights went out by the trolley pole leaving the wire, that it continued to move as a result of its own momentum, that two of his witnesses saw it, one of them at a distance of 300 feet, notwithstanding the lights were out, and, therefore, he was guilty of contributory negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED.

*Jefferson Chandler* and *T. M. Pierce* for appellant.

(1) The court erred in refusing to instruct the jury at the conclusion of plaintiff's case in chief that under the pleadings and the evidence their verdict should be for defendant, and that plaintiff was not entitled to recover. The jury should have been instructed that plaintiff was not entitled to recover because the proof showed that the injury to deceased, from which

he died, was brought about and occasioned by his own negligence; there was no evidence in the record that defendant was guilty of any negligence on account of which deceased was injured. Lee v. Jones, 180 Mo. 299; Nellis St. Ry., Sur. Law 391; Feary v. Railroad, 162 Mo. 75; Wynn v. Railroad, 133 N. Y. 575; Anderson v. Railroad, 30 Misc. Rep. (N. Y.) 104; Donelly v. Railroad, 109 N. Y. 16; McFarland v. Railroad, 29 Misc. Rep. (N. Y.) 128; Kelley v. Railroad, 75 Mo. 138; Carl v. Railroad, 55 Mo. 476; Maher v. Railroad, 64 Mo. 267; Powell v. Railroad, 76 Mo. 80; Payne v. Railroad, 129 Mo. 405; Prewitt v. Railroad, 134 Mo. 615; Railroad v. Beale, 73 Pa. St. 504; Donohue v. Railroad, 91 Mo. 357; Railroad v. Swanson, 57 Ill. App. 309; Bryant v. Railroad, 22 S. W. 797. (2) No negligence was shown on the part of defendant contributing to the injury of deceased, and the proof showed that the negligence of deceased was the direct cause of his death. Frank v. Railroad, 99 Mo. App. 331; Schmidt v. Railroad, 163 Mo. 657; Stepp v. Railroad, 85 Mo. 229; Powell v. Railroad, 76 Mo. 80; Bank v. Bank, 10 Wall. 639; Harlan v. Railroad, 64 Mo. 484; Lenix v. Railroad, 76 Mo. 86; Taylor v. Railroad, 86 Mo. 457; Yancey v. Railroad, 93 Mo. 433; Hayden v. Railroad, 124 Mo. 566; Hook v. Railroad, 162 Mo. 585; Bryant v. Railroad, 22 S. W. 799; Railroad v. Logan, 13 Lea 32; 27 Am. and Eng. Ency. Law (2 Ed.), 64; Anderson v. Railroad, 30 Misc. Rep. (N. Y.) 104. (3) It was the duty of deceased to have used all of his faculties before driving upon the track of the defendant, and not expose himself to danger, and this he did not do. Stepp v. Railroad, 85 Mo. 229; Powell v. Railroad, 76 Mo. 80; Harlan v. Railroad, 64 Mo. 480; Railroad v. Beale, 73 Pa. St. 504; Donohue v. Railroad, 91 Mo. 357; Lenix v. Railroad, 76 Mo. 86; Yancey v. Railroad, 93 Mo. 433; Cagney v. Railroad, 71 Mo. 484; Nelson v. Railroad, 68 Mo. 593; Hayden v. Railroad, 124 Mo. 566; Hook v. Railroad, 162 Mo. 585; Anderson v. Railroad, 30 Misc. Rep. (N. Y.) 104.

*W. B. & Ford W. Thompson* for respondent.

(1) Whether or not a given rate of speed is unreasonable, and, therefore, negligent, is to be determined with reference to all the circumstances and conditions existing at the time. Van Natta v. Railroad, 133 Mo. 19; Holden v. Railroad, 177 Mo. 472; Sandifer v. Lynn, 52 Mo. App. 558; Wasson v. McCook, 80 Mo. App. 489; Urquhart v. Boutell, 15 Mo. App. 592; Montgomery v. Railroad, 181 Mo. 477; Campbell v. Railroad, 175 Mo. 161. The failure to show that appellant did not ring a bell would not constitute a variance between the *allegata* and the *probata,* since the ringing of a bell is a mere evidentiary fact of the circumstances of the case, and of the presence or absence of a reasonble warning of the car's approach, and was not the act of negligence, upon which the petition was based, or upon which the issues were joined in the court's charge to the jury. Kellny v. Railroad, 101 Mo. 67; Donohue v. Railroad, 91 Mo. 366; Oglesby v. Railroad, 150 Mo. 137; Price v. Railroad, 72 Mo. 414; Werner v. Railroad, 81 Mo. 368; Leslie v. Railroad, 88 Mo. 50; Ridenhour v. Railroad, 102 Mo. 270; Robertson v. Railroad, 152 Mo. 382; Anderson v. R. R., 161 Mo. 411. (2) 1. Where plaintiff has introduced evidence tending to show that defendant has been guilty of negligence which was the direct cause of the injury, the burden of proving that plaintiff was himself guilty of contributory negligence is upon defendant, and contributory negligence cannot be inferred from the mere fact that defendant took certain precautions, but must be established by evidence tending to show that the plaintiff was also guilty of some negligence which directly contributed to cause his injuries. Hall v. St. J. Water Co., 48 Mo. App. 356; Crumpley v. Railroad, 111 Mo. 152; Churchman v. Kansas City, 49 Mo. App. 366; Buesching v. Gas Light Co., 73 Mo. 219; Flynn v. Railroad, 78 Mo. 195; Weller v. Railroad, 164 Mo. 180; Baker v. Railroad, 147 Mo. 140;

O'Connor v. Railroad, 94 Mo. 150; Petty v. Railroad, 88 Mo. 318; Richey v. Railroad, 7 Mo. App. 151; Montgomery v. Railroad, 181 Mo. 508; Riska v. Railroad, 180 Mo. 168; Campbell v. Railroad, 175 Mo. 161.    2. Under all of the decisions of this State we believe that at least three presumptions may be indulged, relative to decedent's actions, in the absence of proof to the contrary: (a) That deceased exercised due care for his own safety before attempting to, and while crossing appellant's track, and that it will be conclusively presumed, in the absence of evidence to the contrary, that he did look and listen before driving upon appellant's track. (b) That he relied upon and was justified in relying upon the fact that appellant would comply with its duty, and that its west-bound car would give him due warning of its approach as it neared and was about to cross the public highway at Selby Place. (c) That having acted upon the investigation made by looking and listening, and having driven upon defendant's track, the conditions which existed at the time must have justified his action, because otherwise he was not in the exercise of due care, viz: the car was either not in sight or was sufficiently far distant to reasonably justify his attempting to cross ahead of it, and he either received no warning, or if in fact he did receive a warning, received it at a time and under circumstances which reasonably justified him to attempt to cross ahead of it. Riska v. Railroad, 180 Mo. 168; Richey v. Railroad, 7 Mo. App. 151. (3) The only evidence which appellant introduced was the affidavit in lieu of the testimony of its motorman. This affidavit, instead of disproving appellant's negligence, we think tended to strengthen the case already made against it, and, furthermore, tended to show that deceased was not guilty of contributory negligence. It is very loosely and indefinitely drawn and states conclusions rather than facts, and was admitted against the objection and exception of the respondent, and from it the jury might reasonably

find that the motorman did not ring his bell as he approached Selby Place until he was within about twenty-five or thirty feet from the corner of Selby Place. The evidence of the motorman, as to what he saw and what took place when he was within twenty-five or thirty feet of the place of contact with the wagon, when taken in connection with plaintiff's testimony that the lights were out for 244 feet, certainly entitled respondent to go to the jury. (4) The court very properly refused to instruct the jury, as a matter of law, under the circumstances in this case, that if decedent failed to look and listen before driving upon the track, he was *ipso facto* guilty of contributory negligence, in view of the fact that it was very questionable whether or not a person would have seen this car approaching, or would have heard it by listening before crossing the track, at such a time and place as the evidence shows decedent to have done. Kennayde v. Railroad, 45 Mo. 255; 2 Pattison, Missouri Digest, par. 206, p. 1749; Tabler v. Railroad, 93 Mo. 79; West v. West, 144 Mo. 119; State v. Easton, 138 Mo. 103; Ern v. Rubinstein, 72 Mo. App. 337; McAtee v. Valandingham, 75 Mo. App. 45; Connolly v. Printing Co., 166 Mo. 447; Dixon v. Atkinson, 86 Mo. App. 24; Klockenbrink v. Railroad, 81 Mo. App. 351; Holden v. Railroad, 177 Mo. 456; Campbell v. Railroad, 175 Mo. 161.

GRAVES, J.—Action by wife for the alleged wrongful killing of her husband. Plaintiff is the widow of John Higgins, who was seriously injured at about 6:20 p. m. on the 4th day of November, 1901, by a car, operated by defendant, colliding with a wagon driven by deceased. From the injuries thus received, Higgins died some three days later. In the lower court plaintiff had judgment for $5,000 and defendant appealed; hence, the controversy here.

Defendant is a street railway corporation and at

197 Sup.—20

the time was operating a double-track railway on Wash street in the city of St. Louis. West-bound cars ran upon the north track, and east-bound cars upon the south track. From Fourteenth street for some distance west these two tracks ran east and west. The tracks came into Wash street from the south on Fourteenth street, at the intersection of which with Wash street, the turn west was made.

The amended petition, upon which the case was tried, for grounds of negligence charges: first, an unreasonable rate of speed; second, a failure to ring the bell or sound the gong or to give warning of the approaching car; and third, a failure to display a light to warn travelers of an approaching car. The answer is first, a general denial, second, a plea of contributory negligence, and third, section 1473 of oridnance 19991, which is as follows:

"Any person who shall in this city ride or drive any animals in any highway, thoroughfare or public place, quicker than or beyond a moderate gait, or shall ride or drive any such animals so as to cause such animal or vehicle attached thereto to come into collision with or strike any object or person, shall be deemed guilty of a misdemeanor."

The reply was a general denial of all new matter set up in the answer.

THE EVIDENCE:

The undisputed evidence shows that defendant's double track comes in from the south on Fourteenth street and turns west on Wash street; that Fourteenth street is sixty feet in width; that from Fourteenth street to Fifteenth street is 376 feet; that Fifteenth street is sixty feet in width; that from Fifteenth street to Sixteenth street is 376 feet; that Sixteenth street is sixty feet in width; that from Sixteenth street to Seventeenth street is 376 feet; and that Seventeenth street is sixty feet in width; that Fifteenth street as it comes

EXHIBIT "A."

from the south into Wash street, comes to Wash street, but proceeds no further; that at this point it meets what is known as Carr Park, or City Block 1176, which is on the north side of Wash street; Carr Park from building line on east to building line on west is 356 feet as it faces south upon Wash street, from curb to curb it is 372 feet; to the east of Carr Park is Atchison Place, 60 feet wide, and to the west is Selby Place, sixty feet wide; both Atchison Place and Selby Place are streets or avenues coming from the north of Wash street, but having their southern terminus in Wash street; the point of the accident is a trolley pole fifty-nine feet west of Selby Place; from building line to building line from Fourteenth street to Atchison Place is 160 feet; that the point of accident is 725 feet west of the center of Fourteenth street and 131 feet east of the middle of Sixteenth street, and 567 feet west of the middle of Seventeenth street; there were no lights at either the intersections of Atchison Place or Selby Place, but there were lights (city lights) at Fifteenth and Sixteenth street; that the night was dark and it was dark at the time of the accident; that the lights on the car went out at Fifteenth street.

The foregoing facts stand undisputed, in the evidence, although in the petition, the question of darkness might be questioned from the allegations.

A plat of the situation was in evidence and for the information contained we incorporate it as a part of this statement.

Passing these undisputed facts, the testimony for plaintiff, which is practically undisputed except as hereinafter noted, shows that she is the widow of John Higgins, deceased. That Higgins died November 7, 1901, from injuries received November 4, previous, by colliding with a car upon defendant's road; that the speed of the car was from six to 8 miles per hour; that the car did not stop at Atchison Place; that deceased

was driving a heavy single horse wagon toward the east and just before the accident attempted to cross with the same over the north track of defendant's street railway, at or near a trolley pole fifty-nine feet to the west of Selby Place, as if to go into Selby Place; that in so doing his wagon was struck by a west-bound car and the deceased injured with results as above; that the car struck the front end of the wagon; that when the car stopped the rear platform was about two or three feet from Higgins, after the accident; that deceased was an old driver and familiar with the surroundings of the situs of the accident; that just before the collision deceased hollowed, "For God's sake stop that car;" that the approaching car was seen by the only eye-witness to the accident, Frank J. Rogers, who says the motorman was trying to stop the car when he looked; that the dim outline of the car was seen by another witness who had crossed over just ahead of this car and hearing the crash looked to the west and saw the dim outline of the car; this witness was at the middle of Carr Park, or about 300 feet from the car at that time; that the lights in the car went out because of the trolley pole leaving the wire, which the conductor immediately attempted to adjust, by taking hold of the rope on the trolley pole. These facts appear from plaintiff's testimony.

The defendant introduced the ordinance pleaded in its answer hereinabove set out, and in addition the statement of the motorman, as follows:

"That he was the motorman on west-bound car No. 143, on the 4th day of November, 1901, and was proceeding west, when he received a bell to stop at Sixteenth street. That he rang his bell as he approached Selby Place, which runs north from Wash street, a short distance east of Sixteenth street; that when within about twenty-five or thirty feet from the corner of Selby Place while the car was running about six or eight miles an hour, the flow of electricity in the trolley wire was in-

terrupted and failed, and said car was for a few seconds left without light or power, except its own momentum. That about this time a wagon, coming from the south and moving diagonally southeast, suddenly appeared across the west-bound track, a few feet in front of said west-bound car; that the said motorman made every effort to stop the car as soon as he saw the wagon but was unable to stop it, only after it struck the wagon, at about the front wheel, and had pushed the wagon in front of the car for a few feet. That about the time said horse and wagon was drawn into and across said west-bound track, the said west-bound car was without power and could not be reversed, and could not be stopped with the appliance at hand before it struck the said wagon.''

This was all the evidence for the defendant. The contentions go chiefly to the giving and refusing of instructions, and in addition that section 2864, Revised Statutes 1899, does not apply to street railways. These will be noticed in the course of the opinion in so far as it is necessary.

I. At the threshold of this case we are met with the statement and contention upon the part of defendant that section 2864, the section under which this action is brought, does not apply to street railroads. At some time the question must be squarely met, notwithstanding the amendment of 1905, and it might as well be here as later.

The statute provides: ''Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee whilst running, conducting or managing any locomotive, car or train of cars, or of any master, pilot, agent or employee whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach or other public conveyance whilst in charge of the same as driver; and when any passenger shall

die from any injury resulting from or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car, or any steamboat, or the machinery thereof, or in any stage coach or other public conveyance, the corporation, individual or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach or other public conveyance at the time any injury is received resulting from or occasioned by any defect or insufficiency, unskillfulness, negligence or criminal intent above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars.''

To our mind the purpose of this statute was to allow damages for the negligent acts of the servants managing, running and controlling public conveyances. These conveyances may be such as are composed of steam engines and cars; they may be cars propelled by horse power; they may be cars propelled by electricity; they may be coaches propelled by horse power; they may be coaches propelled by steam or other power, as the automobile, so they be public conveyances. The statute uses the term ''or any other public conveyance.'' But we need not go even thus far. The statute says, ''whilst running, conducting or managing any locomotive, car or train of cars.'' Notice the punctuation and connectives; analyze the sentence, supplying the omitted words and we have, (1) ''Whilst running, conducting or managing any locomotive; (2) ''Whilst running, conducting or managing any car;'' (3) ''Whilst running, conducting or managing any train of cars.'' The motive power used in the locomotive is not limited to steam, nor is the method of running the car, or train of cars, limited to any particular means or motive power. It was no doubt couched in these general terms, when

originally enacted, in view of our American progress-
iveness.

If we are to construe the statute otherwise, we
would have a singular situation. There is no question
that a street car is a public conveyance. If we attach
horses thereto and put on a driver, under another
clause of the statute, we would have liability of the
company, but according to contention of counsel for de-
fendant, no liability, if we changed the propelling pow-
er to electricity. In other words, we would have street
railway companies liable at times and not liable at
other times, if they changed their motive power. In our
judgment the statute was intended to apply to public
conveyances of whatever kind, as first hereinabove
stated.

The Bench and Bar of the State have proceeded up-
on that theory for these many years, and it remained
for the act of 1905 to suggest to lawyers, for the first
time, that street railways were not within the purview
of the statute.

This act of 1905 brings about several radical
changes in the statute, among others street cars are spe-
cifically mentioned, but it does not necessarily follow
from this fact that the statute was not previously broad
enough to cover such public conveyances. This change
might have been suggested to the legislative mind by
the suggestion made by VALLIANT, J., in Drolshagen v.
Railroad, 186 Mo. 258, decided December 22, 1904, the
motion for rehearing being decided February 15, 1905,
while the Legislature was in session. However, in that
case Judge VALLIANT was "better satisfied" to leave the
judgment rest upon another and different proposition,
and we think that to conclude that he intended to hold
section 2864 as not applicable to street railways a
misconception of his opinion.

That our Bench and Bar has proceeded upon the
theory that this statute applied to street railways, is
evidenced by the number of cases brought and deter-

mined without the question being raised, which, to say the least, is very persuasive authority of the construction to be given to this statute. [Liddy v. Railroad, 40 Mo. l. c. 518; O'Flaherty v. Railroad, 45 Mo. l. c. 71; Farris v. Railroad, 80 Mo. l. c. 330; Werner v. Railroad; 81 Mo. l. c. 370; Welsh v. Railroad, 81 Mo. l. c. 468; Lynch v. Railroad, 112 Mo. l. c. 441; Riska v. Railroad, 180 Mo. l. c. 184; Meeker v. Railroad, 178 Mo. 173; Schmidt v. Railroad, 163 Mo. 645.]

The above are some of the cases wherein verdicts for $5,000 were sustained by this court, and wherein instructions were approved making street railways amenable to the death penalty clause of section 2864.

In the Lynch case, supra, GANTT, J., expressly passes upon the question in this language: "That street railways come within the scope of section 4425, we think clear." Section 2864 was section 4425 in Revised Statutes of 1889.

On the other hand, it can be argued that by reason of the act of 1905, the Legislature has construed the former statute not to cover street railways. This action of the lawmaking power can as reasonably be construed to mean that whilst they had no doubt of the construction to be given the statute, yet to obviate the misconceived doubt thrown thereon by the misunderstood remarks in the Drolshagen case, they would make "assurance doubly sure" by incorporating the matter in express terms. The date of the opinion and the date of the act would lend support to this view. There was evidently a misunderstanding of Judge VALLIANT's remarks.

But, however this may be, we think the statute upon its face is in language broad enough to make street cars and street railways amenable thereto.

II. We next confront the demurrer to plaintiff's testimony, offered at the close of all the evidence in the case, which in our judgment presents the serious question in this case. The trial court by instruction left

out of the case the alleged negligent failure of the defendant to give warning, and properly so, because there was evidence showing that the bell or gong was sounded, and no evidence introduced by plaintiff showing that it had not been sounded. This leaves two grounds of alleged negligence, to-wit: the failure to have a light upon the car, and the alleged unlawful speed of the car. In passing upon this demurrer it becomes necessary not only to look into these two alleged acts of negligence, but likewise the alleged contributory negligence of deceased.

1. The evidence shows that the light upon the car went out at Fifteenth street, by the trolley pole leaving the trolley wire, by which the car was divested both of light and motive power. How this happened to be done is not explained by the evidence. Whether this failure to have the light was the negligence of defendant's agents whilst running, conducting or managing the car, or of some independent cause is not made to appear from the evidence. All that does appear is that the trolley pole left the trolley wire and that the conductor immediately tried to replace it. We conclude, therefore, that there was no sufficient evidence to sustain this ground of alleged negligence.

2. The evidence does show that the lights went out at Fifteenth steet; that the car was running from six to eight miles an hour and continued so to run with the lights out, but with the failure of the lights, the power to stop the car also failed. It is contended that under these circumstances the rate of speed was negligence. The rate of speed in so far as the petition and evidence shows was not in violation of any ordinance or law, in fact, no ordinance negligence is pleaded, the plaintiff relying upon common law negligence.

There can be no doubt that there are circumstances under which a speed of six to eight miles an hour would be negligence, but the question is whether or not a state of facts has been shown in this case which

would authorize a court to submit this rate of speed as a matter of negligence for the determination of the jury. The only thing in the entire record concerning the character of the place of the accident is that these streets are public streets.   There is no evidence as to the amount of travel upon these streets or at these street crossings. As was well said by BURGESS, J., in Van Natta v. Railroad, 133 Mo. 1. c. 19: "What constitutes negligence in any given case must necessarily depend upon the facts connected with the accident which is claimed to have been occasioned thereby, and the place where it occurred.  What would be a negligent rate of speed for an electric street car in one locality, would not necessarily be so in another part of the same city or the same street."

In this case the crossing at Selby Place and even at the other streets indicated in the evidence might have been crossings and places where there was little or no travel, and where no one lived or did business and where the agents of the railway company would little expect either persons or vehicles to be upon the tracks. This court can't conclude that, because the streets and crossings mentioned are within the corporate limits of a large city, they were such as would require a reduced rate of speed in approaching them even without lights upon a car.   There should have been some evidence as to the character of these streets and crossings more than the mere bit of evidence found in this record.  We therefore conclude that negligence upon this point was not sufficiently shown.

3. The next is the alleged contributory negligence of deceased.  It stands undisputed that the light upon this car was burning until it got within 330 feet of the place of accident; it is alleged in the petition and in a way shown by the evidence that plaintiff was driving eastward on the south side of Wash street, and would therefore be facing the approaching car; that the car ran 400 feet or nearly so from Fourteenth street to

Fifteenth street with the lights on; plaintiff was evidently facing this car and by the exercise of care could have known of the approach thereof and could even have known of the fact that these lights went out at Fifteenth street; the closest point at which deceased could have come into Wash street was at Sixteenth street, a distance of 130 feet from the point of accident; as to where he did come into this street is not shown by the testimony; it further appears that both of the witnesses for the plaintiff, who were not on the car, were able, notwithstanding the absence of lights on the car, to see the car, one of them at a distance of 300 feet. What they did, deceased, by the exercise of ordinary care and caution, could have done. There is no direct evidence as to what he did or did not do before attempting to cross this track, and as was said in the course of the oral argument, "The plaintiff's case rests largely in the bosom of a family of friendly presumptions;" that it will be presumed that deceased exercised due care for his own safety before attempting to cross the track, by looking and listening; that it will be presumed that the defendant would comply with its duty by giving due warning of the approach of its car and that deceased relied upon this fact; that it will be presumed that he, deceased, was reasonably justified in attempting to cross the track ahead of the car, having looked and listened, as in the previous presumption stated.

We are not desirous of taking from deceased any of the presumptions to which he is entitled, and we are not saying that he was not, as a matter of law, entitled to all claimed for him by counsel for plaintiff. Presumptions, however, vanish upon the appearance of testimony and upon the appearance of facts and circumstances which would show that the presumptions ought not to be indulged. The basic presumption in this case is that deceased exercised due care for his own safety before attempting to cross the track by looking

and listening. Should this presumption be indulged in the light of the testimony? In other words, had he looked, could he not have seen the car as did the witnesses? Had he listened, couldn't he have heard the coming car? There are no circumstances showing any obstructions to the view save and except the darkness of a November evening at 6:20 p. m., described in plaintiff's petition as, "nightfall fast settling down upon the highways." There is nothing in the evidence tending to show any obstacle as to his hearing the approaching car, save and except the movement of his own wagon. The evidence shows a light at Fifteenth street and one at Sixteenth street, the one about 300 feet and the other about 130 feet from the place of accident. It is true the character of these lights is not shown by the record, a thing which ought to have been shown, not only for the enlightenment of the jury but for the enlightenment of this court. Under these facts we are inclined to the view that the contributory negligence of the deceased is sufficient to defeat this action. The demurrer to the evidence should have been sustained.

In our judgment, we think this case should be reversed, not only upon the ground of contributory negligence of deceased, but upon the failure of the record to disclose such facts as would show the alleged negligence of the defendant as pleaded in the petition.

Cause reversed. *Brace, C. J.*, and *Valliant, J.*, concur *in toto; Lamm, J.*, concurs in all except the remarks as to the contributory negligence of deceased.