# DROLSHAGEN v. UNION DEPOT RAILROAD COMPANY, Appellant.

### Division One, February 15, 1905.*

1. **PLEADING: Alternate Pleading: Inconsistent Counts: Election: Negligence.** Where the statements in one count of a petition are so inconsistent with those in another that if those of the first are true those of the other cannot be true, a motion to elect should be sustained. Where one count charges that the deceased was on the street car and was wrongfully ejected therefrom, and the other that he was on the public street and was negligently run over by the car, they are inconsistent. Such counts are not pleading in the alternative.

2. ———: ———: ———: ———: **Effect of Verdict.** Where the verdict and judgment were for plaintiff on only one of the inconsistent counts, perhaps the error in overruling the motion to elect was not prejudicial.

3. **MASTER AND SERVANT: Scope of Authority: Pleading: Objection at Trial.** Where objection is not made, until the trial is about to begin, that the petition does not state a cause of action, in this, that it does not aver that the negligent act of the motorman in ejecting deceased from the street car was within the scope of his employment, the objection should be overruled if the petition is susceptible of a construction from which such averment may be drawn.

4. ———: ———: ———: ———: **Proof.** But if it is necessary, in order that the railway company be held liable for the motorman's negligent act, that that act must have been within the scope of his employment, then, however imperfectly that act is pleaded, the evidence must show that it was within the scope of his authority.

5. ———: ———: **Motorman: Ejection of Trespasser.** The authority of a motorman of a street car to eject a passenger or trespasser from the car does not flow from his duty to operate the machinery that stops and starts and moves the car; and, hence, in order to hold the street car company liable it must be shown

*Note.—Decided December 22, 1904; motion for rehearing filed; motion overruled February 15, 1905.

by evidence other than his mere employment as motorman that he had authority from his master to eject from the car a person not charged to be a passenger and whose ejectment was not necessary for the protection of passengers, by striking his hand and arm with a blunt instrument, as he stood on the running board, thereby causing him to loose his handhold and fall.

6. ———: ———: ———: ———: Statute: Driver. The word "driver" used in the statute (sec. 2864, R. S. 1899) which makes the owner of a stage coach or "other public conveyance" liable for the negligent or willful killing of any person by the driver thereof, does not include motormen in charge of street cars.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

(1) The court erred in overruling defendant's objection to the introduction of any evidence. The first count falls far short of alleging that the act charged was within the scope of his employment. The fact that the motorman and driver was in charge of the car, at the time of the alleged commission of the acts, does not state a case. The pleading must go further and show that the motorman was "engaged in the service he had been engaged to render." Cousins v. Railroad, 66 Mo. 572; Doldan v. Hubinger, 80 N. W. 514, 6 Am. Neg. Rep. 506. (2) There was no evidence offered by either side as to what the duties of the motorman's employment were. His duties are not fixed by law, and were a matter of proof, to be shown by the plaintiff, and in the absence of proof that he had authority to eject trespassers from the car, plaintiff was not entitled to recover upon the first count. Farber v. Railroad, 32 Mo. App. 381; Farber v. Railroad, 116 Mo. 81; Farber v. Railroad, 139 Mo. 272; Walker v. Railroad, 121 Mo. 575; McPeak v. Railroad, 128 Mo. 643. The fact that the act causing the injury

was in the scope of the duties of defendant's agent must be both alleged and proven. The failure of either is fatal to a recovery. Raming v. Railroad, 157 Mo. 509; Railroad v. Anderson (Tex.), 17 S. W. 1039; Farber v. Railroad, 116 Mo. 81; Krueger v. Railroad, 84 Mo. App. 366.

*A. R. Taylor* for respondent.

In this record we find the offending motorman in this case actually on the car at his place of duty, actually controlling the movement of the car, holding, as appellant urges in his brief, the relation of driver, for he urges that he holds the same relation to the street car that an engine driver holds to the engine and train. He has control of the brakes and stopping appliances of the car, much the same as the engine driver of the engine. The car moves by his act; the car stops by his act. He receives passengers; he discharges passengers; that is, he does the essential acts connected with this vital part of the business of the operation of the car. This appears in the record in connection with the duties of the motorman. When a passenger desires to enter a car he signals the motorman, not the conductor. The motorman stops the car, not the conductor. Now, we urge that these well-established facts pertaining to the duties of the motorman necessarily imply the authority to tell a child to get off a car, and to remove a child from the car. He stops the car to receive and to discharge a passenger. This case of a street car is markedly different from a steam car. With the latter there is a long train. There is but one man intrusted with the power to stop the train. This is the conductor. He alone gives the order to the engineer controlling the stopping and starting of the train. He does not stop at the signal of passengers, but only stops when signaled by the conductor to do so. The brakemen have nothing

to do with stopping the car, except when ordered by a superior to do so. Neither the brakeman nor the engineer of a steam railroad carrier has any direct connection with the reception or discharge of passengers. But in the case of the motorman, he has more to do with the receipt and discharge of passengers than the conductor. He, not the conductor, accepts the signal of the passenger that he desires to become a passenger. The motorman accepts the proposal of the passenger, and by his act in doing so and receiving the passenger on the car completes the contract to carry the passenger in behalf of the carrier. This is clearly inferable from the record in the case, and, as every one knows, is the usual way of carrying on the business, for from the nature of the business the motorman is first brought into relation with the intending passenger. His place on the forward end of the car makes him the one to whom in the first instance the passenger must first propose to become a passenger. If he does not accept the proposal he does not stop his car, and there is no relation of passenger and carrier established, no contract made. Schepers v. Railroad, 126 Mo. 673; Ephland v. Railroad, 137 Mo. 194.

VALLIANT, J.—Plaintiff sues to recover the penalty prescribed by the statute, section 2864, Revised Statutes 1899, for the death of his minor son caused by being run over by a street car of defendant. The petition is in four counts: in the first it is stated that the boy was on the car and was forcibly ejected therefrom by the negligent act of the motorman; the second, that the boy was on the car and was ejected therefrom by the motorman striking him unlawfully, willfully and with criminal intent; the third, that the boy was on the public street, and that the motorman negligently ran the car against him and over him; the fourth, that the boy was run over because the motorman failed to observe the requirements of the "vigilant

watch'' ordinance of the city. The answer was a general denial and a plea of contributory negligence.

Before the beginning of the trial defendant moved the court to require the plaintiff to elect upon which count he would go to trial, because they were inconsistent. The motion was overruled and defendant excepted.

I. The motion to elect should have been sustained. A plaintiff may state his cause of action in different forms in separate counts to meet any phase of the case which it is anticipated the evidence might show, but in doing so he must not in one count make statements which are so inconsistent with his statements in another count as that the proof of the case as stated in one count disproves that as stated in the other. Repugnancy is as bad in a petition as it is in an answer. [Roberts v. Railroad, 43 Mo. App. 287; Enterprise Soap Works v. Sayers, 51 Mo. App. 310; Brownell v. Railroad, 47 Mo. 243; Brady v. Connelly, 52 Mo. 19; St. Louis to use v. Allen, 53 Mo. 49; Owens v. Railroad, 58 Mo. 386, l. c. 394; Rinard v. Railroad, 164 Mo. 270, l. c. 284.] The statements in the first and second counts of the petition are so inconsistent with those of the third and fourth counts that if those in the first two are true those in the last two must be untrue.

If the accident occurred in consequence of the motorman striking the boy on the hand with a blunt instrument thereby breaking his handhold and causing him to fall off the running board on which he was riding, as stated in the first and second counts, then it did not occur by running the car against him and over him while he was on the street or by the failure of the motorman to keep a vigilant watch for him as he approached the car, as stated in the third and fourth counts. Section 626, Revised Statutes 1899, authorizes a party to plead alternatively, but these contrarieties are

not so pleaded. But as the finding and judgment were
for the defendant on the second, third and fourth
counts, perhaps the error in overruling the motion to
elect' was not prejudicial.

II. The verdict and judgment were for the plain-
tiff on the first count for $5,000, and that is the judg-
ment from which defendant has prosecuted this appeal.

The first assignment of error is that the first
count does not state facts sufficient to constitute a
cause of action, in that it fails to state that the act of
the motorman, which it is alleged caused the injury,
was within the scope of his employment. This point
was made at the trial in the form of an objection to
any evidence under this count for that reason; the
objection was overruled and exception taken.

The averments of the first count are that the
plaintiff's son was standing on the running board of
the moving car holding with his hands to a bar run-
ning lengthwise along the side of the car, when the
"motorman and driver" in charge of the car, "to
further the business of the defendant as his employer,"
ejected the boy from the car by striking him upon the
hand and arm with a blunt instrument, thereby causing
him to lose his hold and to be thrown and fall from the
car and be run over and killed. The words above
quoted, "to further the business of the defendant as his
employer," are the only words in the petition which it
is claimed charge that the act alleged to have been
done by the servant was within the scope of his employ-
ment.

If the pleader when he wrote those words was in-
tending to make a positive declaration that the act was
within the scope of the servant's employment, he
could have found other words that would have ex-
pressed the idea with more certainty. But we have fre-
quently said that where objection is not made to a peti-
tion until the trial is about to begin, if the petition is
susceptible of a construction that will constitute it a

good pleading it will be so construed, and we are in-
clined to take that view of this petition. But if it
should be conceded to the plaintiff that his petition,
under the circumstances, is sufficient, still the defend-
ant's objection arises again in another form, that is,
that there was no evidence on the subject of the motor-
man's duties or as to the scope of his employment.

In answer to this position the counsel for respond-
ent in his brief says: "Here in this record we find the
offending motorman in this case actually on the car at
his place of duty, actually controlling the movement of
the car, holding, as appellant urges in his brief, the re-
lation of driver, for he urges that he holds the same
relation to the street car that an engine driver holds
to the engine and train. He has control of the brakes
and stopping appliances of the car, much the same as
the engine driver of the engine. The car moves by his
acts; the car stops by his act. He receives passengers;
he discharges passengers; that is, he does the essential
acts connected with this vital part of the business of
the operation of the car. This appears in the record
in connection with the duties of the motorman."

Those facts do appear in the record or are infera-
ble from what does appear. So far as the receiving, car-
rying and discharging of passengers is controlled by
the running, stopping and starting of the car, the busi-
ness is in the care of the motorman; but if the motor-
man has any authority over the passenger, other than
that which necessarily arises out of his control of the
movement of the car, there is no evidence of it in this
record, and therefore our only information on the sub-
ject must be derived from common experience with a
public contrivance in almost universal use. Drawing on
this common experience the counsel for respondent
says that the motorman stops the car to receive and to
discharge a passenger, he stops at signals of persons
on the street desiring to become passengers, and in

this his duties are different from those of the driver of an engine on a steam railroad.

A street car, unlike an express train on a steam railroad, is designed to stop at every street crossing if there is a passenger to be received or discharged there; the motorman takes the signal from the man on the street and stops to allow him to board the car. But steam railroads also have stations at which the train stops on signal, and at such a station the signal is given to the man driving the engine and he stops his train to receive the passenger. When a stop is to be made to allow a passenger to leave the car or train, the passenger does not signal the motorman or the engine driver, but he makes his wish known by signal or otherwise to the conductor and the conductor gives the signal to stop. The duties of the man in the cab of the locomotive engine, and the man on the front platform of the street car with the electric controller in his hand, although varying to suit the respective conditions, are in many respects of quite similar nature and, therefore, the illustration suggested in the brief of counsel for appellant of an engine driver undertaking with violence to eject a passenger, or a trespasser for that matter, from the train, is worthy of consideration. In the case of a passenger whom the engine driver might assault, or forcibly eject from the train, the carrier would be liable, but on a different principle from that we are now considering; he would be liable because the passenger is in his care as carrier and is entitled to his protection even from strangers; but the liability of the carrier in that case is that of a carrier, not that of a master responding for the act of his servant committed in the line of his duty. In the case at bar it is not alleged, and it is not claimed, that the plaintiff's son was a passenger; the ground on which the defendant is sought to be held is that this alleged wrong was done by the defendant's servant in the line of his duty to his master. In such case the burden is on the plaintiff

to show that the act complained of was within the scope of the servant's duties. In the absence of evidence on the subject we are unable to say that a motorman, whose only apparent duty is to operate the machinery that furnishes the motive power for the car, has any authority from his master to eject a person from the car. We can not see any connection between the apparent duty of the motorman to operate the machine and the alleged authority to eject passengers or trespassers from the car; if there is such authority in the motorman its source is independent of his mere duty to operate the machine, it does not flow from that duty. If the motorman should be called on by the conductor, to assist in preserving order or ejecting a person from the car, then a different case would be presented, in which the duties of the conductor and his right to call for assistance would be involved. And even if the motorman acted on his own motion to eject a person, whose conduct seemed to render it necessary for the protection of the passengers or the preservation of the peace, a question of authority implied from such an emergency might arise; but that is not the case at bar. Here the boy, according to plaintiff's story, was injuring no one and threatening injury to no one unless it was to himself in attempting to ride on the upturned edge of the running board. The cause of or excuse or pretext for the alleged assault by the motorman is unexplained by any circumstance in the case.

This case falls within the rules of law laid down by this court in Farber v. Railway, 116 Mo. 81, wherein it was held that the railroad company was not liable for the act of a brakeman who caused the alleged injury to the plaintiff by forcing him off a moving freight train, on which he was a trespasser, in the absence of evidence showing that the act was within the scope of the brakeman's employment.

Respondent quotes the language of the statute, section 2864, Revised Statutes 1899, under which the suit

is brought, and relies on the term "driver" therein used as including in its meaning a motorman, who in fact is the driver, of the machine as the man in the cab is the driver of the locomotive engine. The language relied on is: "Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee whilst running, conducting or managing any locomotive, car or train of cars, or of any master, pilot, engineer, agent or employee whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach or other public conveyance whilst in charge of the same as driver," etc.

The petition was drawn with that "driver" idea in mind; it declares that the "defendant's motorman and driver in charge of said car and whilst acting as such motorman, and undertaking to further the business of his employer, ejected the plaintiff's son from said car by striking him," etc. The learned counsel in his brief says: "The single requirement of this statute is that the servant whose negligence causes the injury should be in charge of the public conveyance (the car) *as a driver*. We submit that this motorman performed the precise function of a driver of a car. He drove the car; he controlled its movements as a driver. Counsel for appellant likens his position on the car to an engine driver. He then was in charge of the car as a driver."

When we call a motorman or a man who operates a locomotive engine a driver, we are conscious of using that word in a somewhat artificial sense. The term driver is not as commonly used in this country to designate one who operates a locomotive engine on a railroad as is the term engineer, although perhaps the former is nearer the original signification than the latter. But the word "driver" was not used in this statute in that sense. In the beginning of the sentence words more aptly describing an agent or servant operating an

engine or other machine moving a car or train or steam-boat are used, and after those words come the mention of the stage coach and the like of it, in these words, "or of any driver of any stage coach or other public conveyance whilst in charge of the same as driver," etc.

This statute was enacted in this State in 1855, long before electricity was used as we now use it, and long before there was in common service what we now call a motorman. But in those early days a stage driver was a personage as well known as an inn-keeper and his authority was known. When the public stage driver was on the road with his coach, there was no one present over him in authority, he was *pro hac vice* the corporation or stage coach company itself. His title was driver, but driving the horses was not his only duty; he was, as driver, in charge of the coach. This clause of the statute was aimed at him, and, to prevent a company from avoiding liability by running a vehicle that was not called a stage coach, the words "or other public conveyance," were added, the meaning of the clause being, "or of any driver of any stage coach or other public conveyance [*ejusdem generis*] whilst in charge of the same as driver." The motorman does not come under that clause, because he is not in charge of the car, and he does not occupy towards the corporation and the public the position of the driver of a stage coach or other vehicles of that kind.

We are better satisfied to leave this case resting on the failure to show the motorman's authority from his employer to do what he is accused of doing, since we have looked into the evidence and are convinced that there is no reasonable ground to believe that the motorman was guilty of the act charged. The overwhelming evidence shows that the boy was not on the car at all, but that he tried to cross the street so close in front of the car that it was impossible for the motorman to prevent striking him with car and running over him.

The judgment is reversed and the cause remanded to the circuit court to be tried *de novo*. All concur except *Robinson, J.*, absent.