WILBUR STOOKEY, a Minor, by His Next Friend, CARRIE M. STOOKEY, Respondent, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.

**Springfield Court of Appeals, January 14, 1922.**

1. **RAILROADS: Negligence in Maintaining Crossing Held for Jury.** evidence that at a highway crossing, which had been maintained

209 M. A.—3

for years, a railroad company tore out the boards on either side of rails and raised the track several inches, and did not replace the boards or raise the ground between the rails to the level of the ties, warranted a finding that it failed in its duty to maintain the the crossing in a proper condition as required by statute, and authorized the submission of the issue of the company's negligence to the jury.

2. ———: Contributory Negligence of Driver of Automobile Stalled, Held for Jury. Where an automobile driver at a crossing where gates were maintained and the rails had been raised above the level of the ground stopped between the gate and the track and he and those with him looked both ways before starting to cross, but his engine stalled when the wheels dropped over the rail and he was struck by a train, which because of a curve could have been seen for only about 32 seconds before the collision, a demurrer to the evidence on the ground of contributory negligence was properly overruled.

3. DEATH: Instruction on Damages Held Erroneous, Because not Qualified. Under Revised Statutes 1919, Section 4219, providing that in actions for death under section 4218, the jury may give such damages not exceeding $10,000 as they may deem fair, an instruction to assess a minor son's damages for the death of his father at a sum not more than $10,000 as the jury might see proper, without further qualification, was erroneous, as the jury might well think that they had a right to take into consideration elements of loss for which there can be no recovery.

4. ———: Damages to Surviving Child Limited to Pecuniary Loss. In a minor child's action for the death of his father under Revised Statutes 1919, sections 4218, 4219, he could recover only the pecuniary value of what would have flown to him from his father had he not been killed.

5. ———: Action for Death at Defective Crossing not Maintainable Under Statute Relative to Negligent Management. An action for the death of one struck by a train at a crossing in which liability was not predicated on the negligent management of the train, but on the failure to properly construct and maintain the crossing, could only be maintained under Revised Statutes 1919, sections 4218, 4219, and not under section 4217, relative to death resulting from negligence, etc., in running, conducting or managing any locomotive, car, etc.

6. RAILROADS: Instruction on Negligence Held Defective. In an action for death at a railway crossing, an instruction for plaintiff, which merely declared the law concerning crossings, should have ended with the statement that, "if the jury found defendant had failed in its duty, it would be guilty of negligence."

7. ———: **Instruction on Duty of Traveler Necessary.** In an action for the death of a person struck by a train at a railway crossing, an instruction as to the duty of one approaching a railroad track should have been given.

Appeal from Circuit Court of Pulaski County.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, E. T. Miller, Mann & Mann* and *Frank H. Farris* for appellant.

(1) A railroad company is required to construct and maintain a good and sufficient crossing. Sec. 9944, R. S. 1919; City of Kansas v. Railway, 102 Mo. 640; Zwicky v. Railway, 164 Mo. App. 184; Crane v. Railway, 203 S. W. 642; Lee v. Railway, 150 Mo. App. 183. (2) The instruction wholly failed to refer to the jury the conduct of a reasonably prudent man, and the exercise of ordinary care for his own safety, as the standard of care and measure of duty by which deceased's neglect or care in his behalf should be ascertained. Mitchell v. Railway, 132 Mo. App. 156; Shamp v. Lambert, 142 Mo. App. 573. (3) "In every such action the jury may give such damages, not exceeding ten thousand dollars, as they may deem fair and just with reference to the necessary injury, resulting from such death, to the surviving parties, who may be entitled to sue, and also having regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default." Sec. 4219, R. S. 1919. (4) The law presumes damages to a child from the loss of its parent, and does not require the damages to be measured by exact mathematical calculation, and juries are vested with discretion in assessing damages, but that discretion must be measured by correct rules under proper instruction. Stoher v. Railway, 91 Mo. 518 and 519; McPherson v. Railway, 97 Mo. 259. (a) The jury should be restricted to the pecuniary or necessary injury resulting from the

death of the parent. McGown v. Ore & Steel Co., 109 Mo. 537. (5) The measure of damages is the necessary, pecuniary injury sustained by the plaintiff, and loss of society or fatherly training, advice and counsel, and other such elements of damage are not to be considered by the jury, and the language of this instruction in fixing the damage at such sum as the jury may see proper was in violation of the statute and in conflict with every well-considered and adjudicated case in this State, upon that subject. Knight v. Lead & Zinc Co., 75 Mo. App. 547, 548, 549, 550, and cases cited; Goss v. Railway, 50 Mo. App. 627, 628 and 629. (6) Common experience among us all fixes in our mind about the usual and ordinary sum of money expended each year by the ordinary citizen and the ordinary farmer in the support of a son, and that experience, absent proof to the contrary, is convincing to the mind that this judgment in the sum of $5000 for five years support is excessive and beyond all reason. Moore v. Lusk, 186 S. W. 1163; Stark v. Lusk, 187 S. W. 589; Dugdale v. Railway, 189 S. W. 836; Smith v. Pryor, 190 S. W. 72; Hays v. Hogan, 200 S. W. 286; McCord v. Schaff, 216 S. W. 320; Schulz v. Ry., 223 S. W. 760; Bagly v. City of St. Louis, 186 S. W. 967.

*J. J. Crites, R. J. W. Bloom* and *Lorts & Breuer* for respondent.

(1) The testimony was sufficient and the demurrer was properly overruled. White, Personal Injuries, secs. 910, 911, 913 and 914; Hogue v. Railroad, 32 Fed. 365; Lowenstein v. Railroad, 110 Mo. App. 689; Lowenstein v. Railroad, 117 Mo. App. 371; Lee v. Railroad, 150 Mo. App. 175; 2d Series, Words and Phrases, vol. 1, p. 605; Jenkins v. Gilligan, 108 N. W. 237. (2) The instructions were proper, 2nd Series, Words and Phrases, vol. 4, p. 659; Adams v. Railway, 90 N. E. 382; Shannahan v. Transit Co., 109 Mo. App. 228; Batton v. M. W. A., 111 S. W. 513; Nephler v. Woodward, 200 Mo. 179; Gibler v. Railroad, 203 Mo. 208; Ashbill v. Joplin, 140 Mo. App. 259; Austin v. Transit Co., 115 Mo. App. 146; Hays v.

Hogan, 180 Mo. App. 251; Parsons v. Railway, 94 Mo. 286; Moberly v. Railway, 17 Mo. App. 518; Independence v. Railway, 86 Mo. App. 589; Lincoln v. Railway, 75 Mo. 27; White's Personal Injuries on Railroads, sec. 903; Revised Statutes 1919, sec. 9944.   (3)  The damages assessed were not excessive.  Hays v. Hogan, 180 Mo. App. 251; Parsons v. Railway, 94 Mo. 296; Sharp v. Biscuit Co., 179 Mo. 560; Ogan v. ——, 142 Mo. App. 254; Mabery v. Gravel Co., 92 Mo. App. 596-607; Voelker v. Construction Co., 153 Mo. App. 12; Haynes v. Pearson, 107 Mo. App. 481-486.  (4)  The court was not in error in the exclusion of testimony.  Holland v. Street Railway, 157 Mo. App. 476; Paddock v. Somes, 102 Mo. 235; Dodson v. Lomax, 113 Mo. 555; Railroad v. Express Co., 145 Mo. App. 375; Nichols v. Construction Co., 18 Mo. App. 133; R. S. 1919, sec. 1226.

FARRINGTON, J.—The plaintiff, a boy 15 years old, obtained a judgment through his next friend, his mother, against the defendant on account of the death of his father which occurred in Pulaski county, Missouri, about five o'clock in the afternoon on August 20, 1919, at a railroad crossing which was maintained by the defendant.  The defendant appeals assigning errors, first, that the court erred in refusing an instruction, offered by the defendant, in the nature of a demurrer to the evidence; and the other assignments go to the giving of plaintiff's instructions and a refusal of some of defendant's instructions offered.

The first proposition that requires our attention is the demurrer to the evidence, and this requires a statement of the case as made.  On the morning of August 20, 1919, the father of plaintiff went to the town of Richland, Missouri, in a Ford touring car, taking with him his wife and his son, the plaintiff here. The road they traveled to Richland required that they cross defendant's railroad right-of-way, and it appears that a road and railroad crossing had been maintained for years by the defendant but that some time prior

Stookey v. St. L., S. F. Ry. Co.

Exhibit A Facing East Showing Crossing.

Stookey v. St. L., S. F. Ry. Co.

Exhibit B Facing East Showing Crossing.

Exhibit C Facing West Showing Crossing.

Stookey v. St. L., S. F. Ry. Co.

Exhibit D Facing North Showing Approach.

Stookey v. St. L., S. F. Ry. Co.

Exhibit E Facing South Showing Approach.

Exhibit F. Facing West Showing Crossing.

to this accident the defendant had placed gates on either side of the crossing, the authority or reason for doing so is not shown by the record. At any rate, the defendant did maintain gates and a crossing over the actual track by putting chats between the ties over the crossing, making the ground between the ties level and placing the usual boards on each side of the rail for the approaches over the rails. Some few weeks before August 20th, which was the date on which plaintiff's father was caught in a collision at this crossing, the defendant had torn out the boards on either side of the rails and had raised the track several inches. The evidence offered by the plaintiff clearly shows that some of the boards, especially on the north or west side, had not been placed back, which, of course, made the crossing hard to get over and the track having been raised there was not sufficient chat to bring the ground between the ties, after it had been raised up, to a level with them between the rails. Without going into detail, we may close this branch of the case by saying there is sufficient evidence here upon which it could well be found that the defendant company had failed in its duty to maintain the crossing in proper condition as is required by the statute.

The plaintiff's father, with his wife and son, as stated before, left home on the morning of August 20, 1919, and crossed over this crossing and went on to the town of Richland where they remained until in the afternoon. When they came back home, coming from Richland, and reached the west gate the car, of course, was stopped and the deceased's wife got out to open the gate to let him drive through. She was in the back seat of the car and her husband and son, the plaintiff, occupied the front seat, the husband driving. She testified that she opened the gate and he drove through and stopped about half way between the gate and the railroad track, and that she looked in both directions to see whether a train was coming, and stated that she had seen the train approaching there in going up

there before when they were ready to cross. This statement had reference to times on former occasions, because her testimony and the testimony of her son, the only eye-witnesses for the plaintiff, was that they did not see the train that struck the car until it was very near it. The plaintiff, the son, testified to practically the same thing that his mother did, stating that he got out of the car to look for the train as well as his mother and that there was no train in sight from either direction. They both testified that the husband, before starting the car, looked on both sides before starting the Ford car in low to cross this railroad track.

It appears this railroad track was on about a five foot dump approaching it from the side he was traveling. The evidence of plaintiff clearly shows that for about 1300 feet north of this crossing the track runs straight, but at that place there is a curve and up to the curve from the crossing there are no obstructions whatever that would interfere with the sight of a train from anywhere within the gate on to the railroad crossing; that beyond that point, where the railroad curves, a train could not be seen coming from the north until it reached a point about 1300 feet from the crossing. The evidence shows that the wind was blowing in the direction from which the train was coming, which, taken into consideration with the noise made by a running Ford car, could well account for the mother, son and husband in the car not hearing the rumbling of the train as it approached. The evidence is the train was running about thirty miles an hour, which would require about thirty-two seconds for the train to reach this crossing after it first came in sight around the curve. The evidence is, as stated before, that the deceased started the car up this crossing, which had a height of about five feet. He looked in both directions, and the plaintiff and his mother looked in both directions and they saw no train. Both testified that the car went in low up to the railroad track where the wheels dropped over the iron rail, there being no boards

there, and stalled; that is to say, they testified that the hind wheels of the Ford car were whirling round and round in the chat and the car was making no headway. About this time the son and mother saw the train coming and had gotten very close to the car, and saw the deceased attempting to get out, which is some evidence that he had seen the train coming and was trying to get out of the car to avoid the collision.

This case was not submitted on the humanitarian doctrine but solely on the ground that the defendant had failed to construct and maintain its railroad crossing in a proper way.

Defendant relies upon the plea of contributory negligence, and relies on the cases cited where persons approaching and going upon railroad tracks in the face of an oncoming train, where to have looked was to have seen, and where although they testified that they did look and did not see, yet the physical facts show that the train was in sight and could have been seen by one looking. The cases cited by defendant uphold the doctrine that one going on the track under these conditions is guilty of contributory negligence and will be precluded from recovery regardless of defendant's negligence. We do not think this case, however, falls within that class of cases. It is shown here that when this man started this car, after having stopped it on the inside of the gate, looked and saw no train, and in view of the fact that the train, running at a speed that the testimony shows this train was traveling, would not have been in sight from thirty-two to thirty-three seconds prior to the time he started his car up the railroad dump.

If the deceased in this case is to be held guilty of contributory negligence under the evidence in this case, he must be held to have been guilty of that negligence at a time when the train could not have been seen when he started up on the crossing but was guilty after he got up on the railroad crossing, after the train was probably in sight, and that must be within the range of

from twenty to thirty seconds. He was stalled on the crossing, and that situation was brought about by defendant's negligent maintenance of that crossing. The deceased was in a way in an emergency, with a car that was stalled and the hind wheels slipping. He was necessarily as a reasonably prudent and ordinary man would be, giving some attention to the car which he had started across the track only a few seconds before when everything looked clear. This is not a case where it is shown that he was stalled on this railroad track for five or ten minutes and negligently kept his mind entirely on his car, without paying some heed and attention to whether trains might be coming; but is a case where it was possible for him to look, as a reasonably prudent person would do, as he started up this railroad dump, and see no train in sight owing to the curve in the track some 1300 feet away. As stated before, he was in an emergency, brought about by the failure of the company to properly maintain the crossing, and to hold, as a matter of law, that it was his negligence that contributed to his death would be going farther than any of the cases that have been cited.

In the very recent case of Carlson v. Railroad, 187 S. W. 842, relied upon by appellant, the view of the train was at least one-third farther than in this case, and the party driving the vehicle was under no strain of emergency but simply drove in front of a train which, under the physical facts of the case, was clearly in sight. In this case it was entirely possible, under the evidence, for one to reasonably infer that the deceased here drove on to the track and was caught between the tracks with his Ford stalled and the back wheels spinning before this train came around the curve in sight, and to hold that he was guilty of contributory negligence after he got into that position and situation, during the brief period of from 32 to 33 seconds, is far from the facts to which the rule contended for by appellant has been applied. We must, therefore, hold that the trial court committed no error in overruling the demurrer to the evidence.

We have examined plaintiff's instruction No. 1, and find that there is no reversible error in the same except as to that part of it which undertakes to give the jury a guide on the measure of damages. After stating the premises which must be found, the jury were instructed that if they did find such fact as had been stated in the instruction they would find the issues for the plaintiff *"and assess his damages at a sum not more than ten thousand dollars, as you may see proper."* (Italics ours). The appellant contends that this gives the jury a roaming commission without confining the measure of damages to that which the statute provides in bringing this cause of action, that is, the jury may give such damages, not exceeding ten thousand dollars, as they may deem fair and just *"with reference to the necessary injury resulting from such death to the surviving party who may be entitled to sue."* (Italics ours). The courts have for years construed this to mean the necessary pecuniary loss. [See Johnson v. Mining Co., 171 Mo. App. 134, 156 S. W. 33.] No consideration being paid for loss of society and fatherly advice. The amount this plaintiff, who had six years of minority from his father's death, could recover would be what pecuniary value would have flown to him from his father had he not been killed. More liberal instructions than this have been condemned by the Supreme Court. [See McGowan v. St. Louis Ore & Steel Co., 109 Mo. l. c. 537, 19 S. W. 199.]

This suit must necessarily be brought under section 4218, Revised Statutes of Missouri, 1919, and the measure of damages is fixed in section 4219, as death did not result from negligent management of the engine and cars, but liability was predicated, as shown in the record, for failure to properly construct and maintain the crossing. The cases cited in the statute under section 4217, vol. 1, R. S. of 1919, page 1366, clearly hold that this case must be maintained, if at all, under sections 4218 and 4219.

We have found cases which hold that if the instruction on the measure of damages follows the statute, that it will be broad enough to support a judgment, and that if the defendant desires to ask a more specific instruction it may do so; however, in cases in which the instruction has been held sufficient, they contained a guide of "having reference to the necessary injury resulting therefrom." [Sipple v. Laclede Gaslight Co., 125 Mo. App. l. c. 95, 102 S. W. 608.] Or, as was in the instruction which was held sufficient in the case of O'Hara v. Lamb Const. Co., 200 Mo. App. 292, 206 S. W. 253, l. c. 256, where the instruction directed that the jury allow not to exceed ten thousand dollars, as they may find from the evidence is fair and just compensation to the plaintiff for the "*pecuniary loss*" (Italics ours), if any, resulted to plaintiff.

It is thus seen that in these cases where the courts upheld general instructions on the measure of damages when asked by the plaintiff and nothing is required by the defendant, the instruction which was given did follow the language of the statute, but in the instruction under consideration in this case the only guide to the jury was that they would assess such damages at a sum not more than ten thousand dollars, as they may see proper. Under this instruction the jury might well think that they have a right to take into consideration a great many elements of loss to this plaintiff, occasioned by his father's death, which are not prescribed as a loss that he can recover for under the sections of the statute upon which this suit is based. We must, therefore, hold that the instruction contained reversible error. Other criticisms made by appellant as to instruction No. 1 can be readily eliminated at another trial.

We may also add that instruction No. 2, given for plaintiff, is nothing more than a declaration of what the law is concerning crossings. It would have been better to have wound up by informing the jury that if they found that the defendant had failed in its duty in that regard, then it would be guilty of negligence.

209 M. A.—4

Instruction No. A, asked by defendant, which was refused, was properly so in this case, because there was no liability shown under the humanitarian doctrine, and the instruction was in no way proper under the issues submitted to the jury in this case.

Instruction No. B, asked by appellant, which instructed the jury of the duty of one approaching a railroad track, should have been given.

Because of the error pointed out in instruction No. 1, in giving the jury an improper guide for measure of damages, the judgment is reversed and the cause remanded.

*Cox, P. J.*, and *Bradley, J.*, concur.