ROBERT T. WALLACE and MARY BASKIN, Administrators of the Estate of JOHN WILLIAM WALLACE, Appellants, v. CLARENCE M. WOODS. —102 S. W. (2d) 91.

Division One, February 5, 1937.

Scott J. Miller, Roger S. Miller and W. T. Ragland for appellant.

454

*Thomas P. Burns* and *Chapman & Chapman* for respondent.

HYDE, C.—This is an action for $10,000 for the wrongful death of John William Wallace brought by his administrators. At the

trial plaintiffs took an involuntary nonsuit. Motion to set this nonsuit aside was overruled by the court and judgment of dismissal entered. From that judgment, plaintiffs have appealed.

Defendant has filed a motion to dismiss this appeal on the ground that the nonsuit was voluntary. At the close of plaintiffs' evidence, the court adjourned "until the hour of 9:30 o'clock A. M. of the following day, to-wit, Saturday, November 26, 1932." Evidently, although the bill of exceptions does not so state, defendant had asked the court to give a peremptory instruction. The bill of exceptions shows the following:

"Morning Session, Saturday, November 26th, 1932.

"And thereupon, the Circuit Court of Chariton County, State of Missouri, convened at the hour of 9:30 o'clock A. M. of this day, to-wit, Saturday, November 26th, 1932, pursuant to recess heretofore taken. Plaintiffs and defendant are present in person and by counsel, and the jury is present in the box.

"Thereupon, the trial of this cause is resumed, and the following proceedings had, to-wit:

"Defendant's Given Instructions.

"And thereupon, the court, after argument of counsel, at the request of defendant, and over the objection and exception of plaintiffs, gives to the jury the following instructions, to-wit:

"(Instruction No. 1.)

"Now at the close of plaintiffs' evidence the court declares the law to be that under the pleadings and the evidence in this cause the plaintiffs are not entitled to recover and the verdict and finding must be for the defendant. (Instruction No. 2 set out the form of verdict to find for defendant.)

"To which action of the court in giving said instructions, and each of which, the plaintiffs, by counsel, then and there duly excepted at the time, and still except.

"Motion to Set Aside Involuntary Nonsuit.

"And afterwards, on the same day, to-wit, the 26th day of November, 1932, it being during the regular November, 1932, term of said court, come the plaintiffs by counsel, and file their motion to set aside involuntary nonsuit."

The motion then and there filed, states:

"Come now the plaintiffs and move the court to set aside the involuntary nonsuit, which the plaintiffs were forced to take on account of the fact that the court gave instructions in the nature of a demurrer."

The clerk's minutes, set out in the record proper and in the certified copy of judgment on file here, recite the empaneling of the jury and then continue, as follows:

"At the conclusion of plaintiffs' evidence, the defendant tenders

an instruction in the nature of a demurrer to the evidence, whereupon the jury is excused and the cause is taken under advisement until tomorrow. Thereafter, on November 26, 1932, this cause again coming on, the court indicating his intention of sustaining defendant's demurrer, plaintiff takes an involuntary nonsuit with leave to move to set aside.''

The record proper further shows the filing of plaintiffs' motion to set aside the nonsuit and entry of the order overruling it, and shows the judgment of dismissal thereafter entered. That is what it should show if the proper procedure on involuntary nonsuit was followed. The judgment of dismissal, if entered after an involuntary nonsuit, is the only order or judgment in this case from which an appeal could lie. [See Stith v. Newberry Co., 336 Mo. 467, 79 S. W. (2d) 447; Boyd v. Logan Jones Dry Goods Co., 335 Mo. 947, 74 S. W. (2d) 598; American Car Co. v. Kettelhake, 236 U. S. 311, 35 Sup. Ct. 355, 59 L. Ed. 594.] The final judgment of dismissal, after a motion to set aside a nonsuit, is a part of the record proper; but the giving of instructions (peremptory or otherwise), exceptions thereto, verbal announcement of the taking of a nonsuit, the motion to set aside nonsuit, and the court's action on such motion are all matters of exception. [Smith v. Moseley, 234 Mo. 486, 1. c. 495, 137 S. W. 971; 4 C. J. 130, sec. 1735, and Missouri cases cited; Leahy v. Cheney (Conn.), 98 Atl. 132, L. R. A. 1917D, 809; Austin v. Baker (Me.), 91 Atl. 1005, L. R. A. 1916F, 1130; Electrolytic Chlorine Co. v. Wallace & Tiernan Co., 328 Mo. 782, 41 S. W. (2d) 1049; Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 85 S. W. (2d) 602; Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2d) 977.] They can only become part of the record through the bill of exceptions. Therefore, what is stated about them, in the bill of exceptions, is conclusive over anything else, because ''the integrity of all matters, not a part of the record proper, must depend upon coming into the record through a duly allowed bill of exceptions. . . . Under our practice, matters of exception can only become a part of that record by being first incorporated in a bill of exceptions presented to, allowed by, and ordered made a part of the record by the trial court.'' [Bakersfield News v. Ozark County, 338 Mo. 519, 1. c. 521, 92 S. W. (2d) 603, and cases cited.].

This bill of exceptions contains no recital stating that plaintiffs ever announced the taking of a nonsuit. If they did make such an announcement before the court gave the peremptory instruction, then the nonsuit was voluntary, the case was ended, and no appeal lies. [McFarland v. O'Reilly, 308 Mo. 322, 272 S. W. 692; Hogan-Sunkel Heating Co. v. Bradley (Mo.), 7 S. W. (2d) 255; McDonnell v. Peck Dry Goods Co. (Mo.), 228 S. W. 759; Greene County Bank v. Gray, 146 Mo. 568, 48 S. W. 447; McClure v. Campbell,

148 Mo. 96, 49 S. W. 881.] But if that had been done, a final judgment of dismissal should have been immediately entered and there would have been no reason for the court to go ahead, after the case had ended, and (as the bill of exceptions positively shows) give a written peremptory instruction and a written form of verdict instruction; for plaintiffs to except thereto; for plaintiffs to file a motion to set aside a nonsuit; for the court to rule on this motion; and for the court, after overruling such motion, to then enter a final judgment of nonsuit. These minutes of the clerk are not a part of any record order or judgment because none was then entered. They were not, as they might have been, made a part of the bill of exceptions. These minutes do not show what was said and done by the judge, but only state a conclusion. The clerk's idea may have been that the judge by marking instructions "given" or by reading them to the jury was "indicating his intention of sustaining defendant's demurrer." (To be really technical the clerk's statement could not be true because defendant asked the court to give a peremptory instruction rather than to sustain a demurrer [see Hardin v. Illinois Central Railroad Co., 334 Mo. 1169, 70 S. W. (2d) 1075].) Since these minutes were not made a part of the bill of exceptions, they cannot be considered to overcome the positive showing in the bill of exceptions that a peremptory written instruction was actually given. It is not to be presumed that the court did a useless thing, in fact, several useless things. The bill of exceptions is defective in not showing when the announcement of nonsuit was made, but no one disputes the fact that there was an announcement of nonsuit made sometime on that day. Therefore, since there was no verdict returned as directed by the peremptory instruction something must have occurred to prevent the jury from following this direction. What could have done so except the announcement of a nonsuit at that very time? The recital in the motion to set aside, filed on the same day, shows that plaintiffs' counsel correctly understood the procedure of involuntary nonsuit. Since the bill of exceptions does show that these instructions were given and excepted to, and does not show that an announcement of the taking of a nonsuit was made before they were given, and since both the record and the bill show that no judgment of nonsuit entered until after the motion to set aside nonsuit was filed and overruled, we will hold that the trial court considered plaintiffs to have made an announcement of a nonsuit after the court gave them. This makes plaintiffs' nonsuit an involuntary nonsuit. [See Boonville National Bank v. Thompson, 339 Mo. 1049, 99 S. W. (2d) 93, overruling Owens v. Washington Fidelity National Ins. Co. (Mo. App.), 85 S. W. (2d) 193, and Kane v. Kaysing Iron Works (Mo. App.), 89 S. W. (2d) 532; see, also, Arp v. Rogers, 99 S. W. (2d) 103.] We do not think that this appeal

should be dismissed because of the technical defect of omitting a statement of the fact that an announcement of nonsuit was made, after the giving of the peremptory instruction, when all the proceedings thereafter shown would not have been necessary or proper unless such an announcement had occurred at that time and not before that time. The motion to dismiss the appeal is, therefore, overruled.

■ Plaintiffs' petition is based upon negligence under the humanitarian doctrine. Defendant does not contend that plaintiffs failed to make a case for the jury on that theory, and does not brief that question. Therefore, the only question to be considered on defendant's demurrer is whether plaintiffs have any right of recovery under Section 3262, Revised Statutes 1929, the penalty section of our wrongful death statutes. Plaintiffs do not claim that they could make a case for substantial damages under the compensatory sections of the death statutes, because they admit that deceased was a bachelor with "no one depending upon him," and that they could not show that anyone had suffered or would suffer any pecuniary loss by reason of his death. [See Smelser v. Railroad, 262 Mo. 25, 170 S. W. 1124; Bagley v. City of St. Louis, 288 Mo. 259, 186 S. W. 966; Cummings v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920; Polk v. Krenning (Mo. App.), 2 S. W. (2d) 107; Smith v. Ozark Water Mills Co., 215 Mo. App. 129, 238 S. W. 573; McCullough v. Powell Lumber Co., 205 Mo. App. 15, 216 S. W. 803; Stookey v. Railway, 209 Mo. App. 33, 1. c. 48, 236 S. W. 426; Johnson v. Dixie Mining Co., 171 Mo. App. 134, 187 S. W. 1.]

. Deceased was killed when struck by defendant's truck, driven by defendant himself, on U. S. Highway No. 36 at an underpass under the Burlington Railroad near Laclede on the night of December 21, 1929. Defendant used his truck to carry goods for the public for hire. [See Drakesmith v. Ryan (Mo. App.), 57 S. W. (2d) 727.] The question for determination is whether Section 3262 creates a right of action, for the penalty provided therein, against an owner of a motor vehicle, in use as a public conveyance, for a death caused by the owner's negligence while driving such motor vehicle himself. As originally enacted, Section 3632 was put in one long sentence, "at some expense of rhetorical clearness and precision." [Schultz v. Pacific Railroad Co., 36 Mo. 13.] This sentence has been made longer but not clearer by subsequent amendments. The portion of Section 3262, creating a cause of action for a penalty for wrongful death, may be properly divided (as hereinafter set out) into four separate clauses, distinctly relating to different matters, as follows: (1) Specifying the persons for whose death recovery of a penalty is authorized; (2) defining acts or omissions which are the basis of liability for the penalty; (3) specifying the person, individuals or corporations who are liable for the penalty; (4) stating the penalty

which may be imposed. The statute, thus divided, omitting the last part relating to what persons may sue for and recover the penalty, reads as follows:

"(1) Whenever any person, *including any employee of the corporation, individual or individuals hereinafter referred to whose death is caused by the negligence of a co-employee thereof* (Laws 1905, p. 135), shall die from any injury,

"(2) resulting or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, *or any street electric or terminal car or train of cars* (Laws 1905, p. 135), or of any master, pilot, engineer, agent or employee whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach, *automobile, motor car* (Laws 1905, p. 135) or other public conveyance whilst in charge of the same as a driver; [and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad, *whether the same be steam, street, electric or terminal railroad* (Laws 1905, p. 135), or any part thereof, or in any locomotive, car, *street car, electric car, or terminal car* (Laws 1905, p. 135), or in any steam boat, or the machinery thereof, or in any stage coach, *automobile, motor car* (Laws 1905, p. 135), or other public conveyance],

"(3) the corporation, individual or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns, *operates or conducts* (Laws 1905, p. 135) any such railroad, locomotive, car, *street car, electric car, terminal car, automobile, motor car* (Laws 1905, p. 135), stage coach, or other public conveyance at the time any injury is received resulting from or occasioned by any [defect or insufficiency] *unskillfulness, negligence or criminal intent* (Laws 1885, p. 153) above declared, *or any such officer, agent, servant, employee, master, pilot, engineer or driver, whose 'negligence, unskillfulness, or criminal intent shall cause such injury* (Laws 1911, p. 203),

"(4) shall forfeit and pay *as a penalty* (Laws 1905, p. 135), for every *such* (Laws 1905, p. 135) person, *employee* (Laws 1905, p. 135) [or passenger] so dying, the sum of *not less than two thousand dollars, and not exceeding ten thousand dollars, in the discretion of the jury* (Laws 1905, p. 135)." (Words not in the original enactment of this section are set out in italics, after which appear in parenthesis the citation of the amendments adding them thereto.) [The words set off in brackets refer to injuries to passengers due to a defect or insufficiency in the carrier's equipment, and are not in any way pertinent to the question to be decided herein.]

The Amendment of 1911 added also an entire new sentence at the end of the section which reads, as follows:

"Every person who shall have cause of action for any death through the negligence, unskillfulness, or criminal intent of any servant, under the provisions of this section, may at his option, bring suit thereon jointly against the master and servant, or severally against either master or servant."

"The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning, and to promote its object, and 'the manifest purpose of the statute, considered historically,' is properly given consideration. . . . [2 Lewis Sutherland on Stat. Const. (2 Ed.), sec. 363; Endlich on Interpretation of Statutes, sec. 329; and Maxwell on Statutes (5 Ed.) 425.]" [Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920, l. c. 925.] We must determine the question involved upon the statute we now have rather than upon the original enactment. Words used must be read in the light of the amendments made, and might take a broader meaning as the application of the statute was broadened. We can best decide the present meaning of this section by considering the various steps taken to change it from what it was at first to what it is now.

It is no doubt true that as originally enacted Section 3262 created no cause of action for a penalty for wrongful death against the owner of an instrumentality of public transportation for his own negligence, except for a defect or insufficiency therein causing a passenger's death; and that (as defendant contends) it created a cause of action for the death of a person caused by the negligent operation of such instrumentalities only when it resulted from the negligence of an agent or employee in the owner's employ. The only original right to recover from an individual owner of such instrumentalities, for a death due to his own negligence in the operation thereof was under the compensatory sections, now Sections 3263 and 3264; but it should be remembered that this was an adequate remedy for the persons originally entitled to sue, because the only persons who were entitled to sue prior to the Amendment of 1905 could show actual damages. [Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920.] The history and purpose of the wrongful death statutes was reviewed in the Cummins case and it was there pointed out that these statutes were intended both to provide compensation for those who suffered a loss and to penalize those whose acts or omissions caused a wrongful death. The section covering deaths from injuries due to transportation of the public, however, allowed recovery without proof of damages, and sought, by means of the penalty imposed upon persons or corporations engaged in the business of public transporta-

tion, to safeguard people from the perils of modern agencies of travel used by them.

The two, and only two, grounds of liability provided by the original act were, as follows:

First: "Whenever any person shall die from any injury resulting or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee (operating railroad trains or cars), or of any master, pilot, engineer, agent or employee (operating a steamboat), or of any driver of a stage coach or other public conveyance (operating such public conveyance), . . . the corporation, individual or individuals *in whose employ any such officer*, agent, servant, employee, master, pilot, engineer or driver *shall be at the time such injury* is committed . . . shall forfeit and pay (the specified penalty)."

Second: "When any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any steam boat, or the machinery thereof, or in any stage coach or other public conveyance, the corporation, individual or individuals . . . who owns any such railroad, locomotive, car, stage coach, or other public conveyance at the time any injury is received resulting from or occasioned by any defect or insufficiency above declared, shall forfeit and pay (the specified penalty)."

The liability for negligent operation was limited to the acts of employees not so much by the description of the operators as by the provision that "the corporation, individual or individuals, *in whose employ*" such operators were at the time, should be liable. This clearly made one ground of liability, for a wrongful death penalty, of persons or corporations engaged in transportation with any of the instrumentalities named, the negligence of persons employed by them. The only other ground stated created a cause of action in favor of a passenger for a defect or insufficiency in the transportation equipment they owned. There was no connection between the two, and each was intended to be read separate from the other. [See Schultz v. Pacific Railroad Co., 36 Mo. 13; Brownell v. Pacific Railroad Co., 47 Mo. 239; Proctor v. H. & St. J. Railroad Co., 64 Mo. 112; Crumpley v. H. & St. J. Railroad Co., 98 Mo. 34, 11 S. W. 244; McKenna v. Missouri Pacific Railroad Co., 54 Mo. App. 161; Crohn v. Kansas City Home Tel. Co., 131 Mo. App. 313, 109 S. W. 1068; Higgins v. St. L. & S. Railroad Co., 197 Mo. 300, 95 S. W. 863; Casey v. St. Louis Transit Co., 205 Mo. 721, 103 S. W. 1146.] It is also clear that the principal changes made by subsequent amendments, as to the first ground of liability, negligence of an agent or employee (except to include the operation of new instrumentalities of transportation), have been to make the employee personally liable for the penalty for the death of third persons, as well as the employer, and also to make both

the employer and the negligent employee liable therefor for the death of another employee. These changes alone would not affect the case presented here.

What is the effect of the amendments upon the portion originally stating the second ground of liability under which the owner of the instrumentality used was only liable for a defect or insufficiency therein? It is to be noted that by the Amendment of 1885 there was added to this part after the words ''defect or insufficiency'' the words ''unskillfulness, negligence or criminal intent.'' Then for the first time this clause was connected with the first-ground of liability, from which as shown it was originally entirely separate. Was the purpose of this to make the person or corporation who owned the instrumentality liable for the negligence of one operating it whether such owner employed him or not? For example, for negligence of employees of some other person or corporation using its equipment. It would be most unusual to make one liable for the negligence of someone he did not employ and did not control [See Mangan v. Foley, 33 Mo. App. 250.] Under another statute (see Shaffer v. C., R. I. & P. Railroad Co., 300 Mo. 477, 354 S. W. 257, affirmed 263 U. S. 687, 44 Sup. Ct. 228, 68 L. Ed. 507), the lessor of a railroad is liable for acts of its lessee but the section we are considering is not limited to railroads. No such liability has ever been imposed upon persons or corporations engaged in transportation by other agencies. If not that, what then was its purpose in thus stating that *the owner* should be liable for negligence of an operator of his equipment as well for defects therein. The owner was, under the section as originally enacted, already liable for negligence of the operators employed by him. Could it have been intended then to make the owner liable if he was the operator?

Connecting this clause, concerning the second ground of liability with the first part and reading it so as to apply only to an individual owner, this change made this part of the section read, as follows:

''Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee (operating railroad trains or cars), or *of any master, pilot, engineer,* agent or employee (operating a steamboat), or *of any driver* of a stage coach or other public conveyance (operating such public conveyance) . . . the . . . individual . . . who owns any such railroad, locomotive, car, stage coach, or other public conveyance at the time any injury is received resulting from or occasioned by any . . . unskillfulness, negligence, or criminal intent above declared, shall forfeit and pay (the specified penalty).''

The negligence ''above declared'' was negligent operation. This may not have changed the situation as to railroads, but it was no

doubt true then as now that railroads in this State were operated by corporations. Our Constitution, adopted ten years before this amendment, contained several provisions concerning the operation and regulation of railroads that did not apply to any other transportation companies. Certainly the chance that individuals owning railroads, if any, would operate trains or cars thereon might not have been considered. We should not, however, decide the question involved upon the 1885 amendment alone. Whatever the original legislative purpose may have been, when they came to steamboats they used the terms "master, pilot, engineer" as well as "agent or employee." Perhaps some masters did own their own steamboats, and perhaps an owner might in some instances act as his own pilot or engineer. When stage coaches were mentioned, the terms agent or employee were not used at all, but instead, only the word driver. The term "driver" is not an unusual or technical word. Certainly a driver is only one who drives. A stage coach driver may have had unusual authority on his trips (see Drolshagen v. Union Depot Railroad Co., 186 Mo. 258, 85 S. W. 344), but we know of no good reason why the word driver would not be commonly and reasonably interpreted to be the person actually doing the driving, whether he was one employed by the owner to drive or whether he was the owner driving. If such terms expressed the purpose of subsequent amendments, there was no reason to change them merely because the statute was being made applicable to situations beyond its original scope. We cannot now judicially know the situation as to how often owners drove their own stage coaches or how many were driven by hired drivers. However, we do know, and we are sure that the Legislature knew, when and after they later inserted the words "motor car" and "automobile" in this statute that many owners of motor vehicles used for public transportation of both freight and passengers did drive them in such service. It seems reasonable to believe that, in all the amendments broadening the scope of the act, there was some purpose in using and continuing to use different terms with respect to railroads and other instrumentalities of public transportation.

In 1905 there were several far reaching amendments, which changed the entire plan of this penalty section. One change was to set a maximum and a minimum penalty and to insert the words "as a penalty" to make clear that the whole recovery provided for was a penalty. [See Grier v. K. C., C. C. & St. J. Railroad Co., 286 Mo. 523, 228 S. W. 454.] Another change was the addition of a new class of beneficiaries, who were not necessarily damaged in any way, and who (if they could not prove actual damages) could not recover damages under the compensatory sections. It should be kept in mind that up to this time any beneficiary, who could recover under the penalty section, could recover under the compensatory sections because all

original beneficiaries were those who could show actual damages. Necessarily by giving these new beneficiaries the right to recover under this section, it was intended that, even if they did not sustain actual damage, they should have a right of action for this penalty when one related to them, and without dependents, was killed by the fault of individuals or corporations engaged in public transportation, because they could not recover under the other section. Also at the same time, the words "operates or conducts" were added after the word "owns" in the part of the act, designating who should be liable, which originally applied only to liability for a defect or insufficiency in equipment. It was held that this change was not intended to extend personal liability for the penalty to an employee operating such an instrumentality, and such liability of an employee was thereafter created by the Amendment of 1911. [See C., R. I. & P. Railroad Co. v. Stepp, 151 Fed. 908.]

Considering the whole section as it now exists, reading it in two separate parts, each of which could be applicable to an individual owner personally operating a motor car as a public conveyance, and leaving out the parts that could relate only to liability for negligence of an employee or that relate solely to liability for a defect or insufficiency, we have the following:

First: "Whenever any person . . . shall die from an injury . . . the . . . individual who . . . operates . . . any such motor car . . . or other public conveyance at the time any injury is received resulting from or occasioned by any . . . unskillfulness, negligence, or criminal intent above declared ("of . . . any driver of any . . . motor car or other public conveyance whilst in charge of the same as a driver") shall forfeit and pay (the specified **penalty**)." (After the Amendment of 1905.)

Second: "Whenever any person . . . shall die from any injury resulting or occasioned by the negligence, unskillfulness or criminal intent of . . . any driver of any . . . motor car or other public conveyance whilst in charge of the same as a driver . . . any such . . . driver, whose negligence, unskillfulness, or criminal intent shall cause such injury, shall forfeit and pay (the specified penalty)." (After the Amendment of 1911.)

If either of these had been made, by amendment, a separate section of the wrongful death statutes, would not its reasonable construction be that an owner of such an instrumentality of transportation had been made liable thereby for the penalty for the death of any person resulting from an injury due to his negligence while operating such instrumentality himself?

When the Legislature amended this section in 1911 to clearly place personal liability for the penalty upon an employed driver, who negligently injured any person while operating an instrumentality of

public transportation, can there be any doubt that they considered that they had also placed this liability upon an owner who injured any person while he was, himself, operating such an instrumentality. Could they have intended to make a man liable for this penalty if he was negligent while operating such an instrumentality for another, but not liable if he was negligent while operating it for himself? We do not think that the contrary construction is a reasonable construction of this section as it now stands; but believe that it requires a strained construction of its clauses to reach such a result, and that to do so the words used must be narrowly limited to a single meaning, rather than reasonably interpreted to mean everything they ordinarily are understood to mean. This section, as originally written, has been unsatisfactory to the lawmakers of this State and they have attempted to improve it and broaden its application by amending it. While their purpose could no doubt have been accomplished better by repealing the whole section and re-enacting a new one in clearer terms, we must give effect to the evident purpose disclosed by the changes made. We hold that the reasonable construction of the section as it now stands is that an individual is liable for the penalty imposed, if he 'operates a motor vehicle in public transportation with such unskillfulness, negligence or criminal intent that the death of some person results from an injury occasioned thereby, whether he owned the instrumentality he was operating or whether the owner or user thereof had employed him to operate it.

The judgment is reversed and the cause remanded. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.